# United States Court of Appeals
# for the Federal Circuit

---

## 2014-1771

### ETHICON ENDO-SURGERY, INC.,

*Appellant,*

v.

### COVIDIEN LP,

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, in No. IPR2013-00209

---

## REPLY BRIEF OF APPELLANT

---

Steven D. Maslowski
Ruben H. Munoz
Jason E. Weil
Akin Gump Strauss Hauer & Feld LLP
Two Commerce Square, Suite 4100
Philadelphia, PA 19103-7013
Phone:  (215) 965-1200
Fax: (215) 965-1210

Pratik A. Shah
Hyland Hunt
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Phone: (202) 887-4000
Fax: (202) 887-4288

*Counsel for Appellant Ethicon Endo-Surgery, Inc.*

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, Counsel for Appellant certifies the following:

1. The full name of every party or amicus represented by me is:

    Ethicon Endo-Surgery, Inc.

2. The name of the real party-in-interest (if the party named in the caption is not the real party in interest) represented by me is:

    Ethicon Endo-Surgery, Inc.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    Ethicon, Inc.; Johnson & Johnson.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

    AKIN GUMP  STRAUSS HAUER & FELD LLP:  Steven D. Maslowski, Ruben H. Munoz, Jason E. Weil, Pratik A. Shah, and Hyland Hunt.


Dated:  May 11, 2015                    By:    /s/Steven D. Maslowski
                                               Steven D. Maslowski

i

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

ARGUMENT ......................................................................................3

I.    THIS COURT SHOULD RULE THAT THE PTAB WAS NOT
AUTHORIZED TO INSTITUTE THIS IPR ...................................3

    A.    Section 314(d) Does Not Preclude Review Of This Issue ...................3

    B.    Ethicon Did Not Forfeit Its Challenge ................................6

        1.    Presenting the Issue to the Agency Would Have Been
Futile ........................................................................6

        2.    Alternatively, Exhaustion Should Be Excused to Resolve
this Pressing Legal Question.......................................8

II.    THE DIRECTOR MAY NOT DELEGATE HER DUTY TO
INSTITUTE IPRS TO THE PTAB .................................................9

    A.    The IPR Statute Prohibits Collapsing The Divided Decision-
Making Duties Of The Director And The PTAB................................10

    B.    The Director's Constrained Authority To Delegate To
Secretarial Appointees Forecloses The PTO's Institution Rule .........14

    C.    Basic Administrative Law And Due Process Principles
Reinforce That The PTAB May Not Institute IPRs............................20

III.    THE PTAB'S LEGAL ERRORS ON THE OBJECTIVE INDICIA
LED TO AN ERRONEOUS OBVIOUSNESS DETERMINATION ..........22

    A.    Ethicon Did Not Waive Its Presumption Argument ...........................22

    B.    Covidien Misunderstands The Presumption Of Nexus.......................23

    C.    Commercial Success Need Not Be Predicated On An
"Infringement" Determination ...........................................26

    D.    Ethicon Proved Long-Felt but Unresolved Need ...............................28

E.      The Unrebutted Evidence Of Nonobviousness Compels Reversal ................................................................................29

CONCLUSION ..................................................................................30

CERTIFICATE OF COMPLIANCE.......................................................31

CERTIFICATE OF SERVICE .............................................................32

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amgen Inc. v. Smith*,
   357 F.3d 103 (D.C. Cir. 2004)...........................................................................5

*ArcelorMittal Fr. v. AK Steel Corp.*,
   700 F.3d 1314 (Fed. Cir. 2012) ........................................................................26

*Asociacion Colombiana de Exportadores de Flores v. United States*,
   916 F.2d 1571 (Fed. Cir. 1990) ..........................................................................6

*Bowen v. Mich. Acad. of Family Physicians*,
   476 U.S. 667 (1986)..........................................................................................4, 5

*Brown & Williamson Tobacco Corp. v. Phillip Morris Inc.*,
   229 F.3d 1120 (Fed. Cir. 2000) ........................................................................25

*Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*,
   467 U.S. 837 (1984)...........................................................................................10

*Conroy v. Aniskoff*,
   507 U.S. 511 (1993).............................................................................................13

*Corley v. United States,*
   556 U.S. 303 (2009)............................................................................................17

*Crocs, Inc. v. Int'l Trade Comm'n,*
   598 F.3d 1294 (Fed. Cir. 2010) ...................................................................24, 25

*Cudahy Packing Co. v. Holland*,
   315 U.S. 357 (1942).....................................................................................15, 17

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
   851 F.2d 1387 (Fed. Cir. 1988)........................................................................24

*DGR Assocs., Inc. v. United States*,
   690 F.3d 1335 (Fed. Cir. 2012) ..........................................................................7

*Ecolochem, Inc. v. S. Cal. Edison Co.*,
   227 F.3d 1361 (Fed. Cir. 2000)........................................................................23

*El Paso Natural Gas Co. v. United States*,
632 F.3d 1272 (D.C. Cir. 2011) ............................................................5

*Fleming v. Mohawk Wrecking & Lumber Co.*,
331 U.S. 111 (1947) ...................................................................15, 16

*Glover v. West*,
185 F.3d 1328 (Fed. Cir. 1999) ...........................................................7

*Halverson v. Slater*,
129 F.3d 180 (D.C. Cir. 1997) ......................................................16, 17

*In re Alappat*,
33 F.3d 1526 (Fed. Cir. 1994) ...........................................................14

*In re Cuozzo Speed Techs., LLC*,
778 F.3d 1271 (Fed. Cir. 2015) ...................................................3, 4, 5

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
676 F.3d 1063 (Fed. Cir. 2012) ..........................................................12

*In re DBC*,
545 F.3d 1373 (Fed. Cir. 2008) .......................................................6, 9

*In re Hiniker Co.*,
150 F.3d 1362 (Fed. Cir. 1998) ........................................................3, 4

*J.T. Eaton & Co. v. Atl. Paste & Glue Co.*,
106 F.3d 1563 (Fed. Cir. 1997) ....................................................23, 26

*Lutron Elecs. Co. v. Crestron Elecs., Inc.*,
970 F. Supp. 2d 1229 (D. Utah 2013) ...................................................25

*Media Technologies Licensing, LLC, v. Upper Deck Co.*,
596 F.3d 1334 (Fed. Cir 2010) .........................................................28

*Noel Canning v. NLRB*,
705 F.3d 490 (D.C. Cir. 2013), *aff'd* 134 S. Ct. 2550 (2014)............................8

*Omnipoint Corp. v. FCC*,
78 F.3d 620 (D.C. Cir. 1996) ............................................................6

*Parish v. United States*,
  100 U.S. 500 (1879)......................................................................18

*Rosemount, Inc. v. Beckman Instruments, Inc.*,
  727 F.2d 1540 (Fed. Cir. 1984) .................................................29

*Rust v. Sullivan*,
  500 U.S. 173 (1991)......................................................................22

*Saint Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
  749 F.3d 1373 (Fed. Cir. 2014) .................................................11

*Sims v. Apfel*,
  530 U.S. 103 (2000)........................................................................6

*Splane v. West*,
  216 F.3d 1058 (Fed. Cir. 2000) .................................................16

*Thomson Consumer Elecs., Inc. v. United States*,
  247 F.3d 1210 (Fed. Cir. 2001) ...................................................8

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
  699 F.3d 1340 (Fed. Cir. 2012) ............................................25, 27

*United States v. Giordano*,
  416 U.S. 505 (1974)......................................................................15

*United States v. Mango*,
  199 F.3d 85 (2d Cir. 1999) ....................................................14, 15

*Withrow v. Larkin*,
  421 U.S. 35 (1975)..................................................................20, 22

*Woodford v. Ngo*,
  548 U.S. 81 (2006)..........................................................................6

**STATUTES**

5 U.S.C.
  § 554(d) ........................................................................................20

35 U.S.C.
  § 2(b)(2) .......................................................................................13

§ 3(b)(1) ............................................................................... 18
§ 3(b)(2) ............................................................................... 18
§ 3(b)(2)(A) .......................................................................... 19
§ 6(a) ...................................................................................... 7
§ 6(b) ........................................................................... 14, 19
§ 6(b)(1-4) ............................................................................ 19
§ 6(b)(4) .................................................................. 14, 19, 20
§ 135(c) ................................................................................ 11
§ 312 ..................................................................................... 11
§ 313 ..................................................................................... 11
§ 314(a) ......................................................................... 10, 11
§ 314(b) .................................................................................. 1
§ 314(d) .................................................................................. 3
§ 316 ..................................................................................... 13
§ 316(a)(2) ........................................................................... 13
§ 316(c) ...................................................................... 1, 11, 20
§ 318(a) ................................................................................ 20

## Other Authorities

37 C.F.R. § 1.525(a) ............................................................ 21

37 C.F.R. § 1.183 ................................................................... 7

37 C.F.R. § 42.4(a) ................................................................ 7

157 Cong. Rec. S951-S952 (daily ed. Feb. 28, 2011) ........................................... 12

157 Cong. Rec. S1374-S1375, S1380 (daily ed. Mar. 8, 2011) .............................. 12

157 Cong. Rec. E1183-84 (daily ed. June 23, 2011) ...................................... 13

Michelle K. Lee, *PTAB's Quick-Fixes for AIA Rules Are to Be Implemented Immediately*, Director's Forum:  A Blog from USPTO's Leadership (Mar. 27, 2015) ................................................................. 9

MPEP § 716.01(a) (9th ed. Mar. 2014) ................................................. 27

## INTRODUCTION

The plain terms of the *inter partes* review (IPR) statute provide for a bifurcated process with distinct decisionmakers. Congress unambiguously defined the Director's role in that process: "[t]he Director shall determine whether to institute an inter partes review." 35 U.S.C. § 314(b). Congress was equally clear as to the PTAB's subsequent, limited role: the PTAB "shall … conduct each inter partes review." *Id.* § 316(c). Section 6(b), which enumerates the duties of the PTAB, incorporates this limitation, specifying that the PTAB's duty with respect to IPRs is to "conduct inter partes reviews … pursuant to chapter[] 31." At every turn, the IPR statute repeats that dichotomy—and never departs from it. Opening Br. 28. Nonetheless, ignoring the mandate of the statute, the PTO purports to delegate to the PTAB—typically the same panel of the PTAB—the duties of instituting *and* conducting IPR proceedings. Because the PTAB's duties are limited by statute to conducting, but not instituting, IPRs, the present IPR, which was instituted by neither the Director nor her authorized delegate, is unauthorized and must be reversed.

The PTO and Covidien contend that the PTO may disregard the divided-decision making mandate not because of anything in the text or structure of the statute, but simply because the Director, in their view, may delegate *any* duty to *any* PTO official or employee. But that view of the Director's authority fails to

1

account for Congress's limitation of the default delegation power. Congress did not mean to include the "PTAB" when it said "Director," and the PTO may not fall back on general rules of delegation to change that—particularly where, as here, the result would contravene other basic principles of statutory interpretation, administrative law, and due process. Because of the binding nature of PTO rules, any opportunity to raise below this pure legal issue, which does not implicate the PTAB's expertise, would have been both inappropriate and futile. This fully briefed and pressing issue is now properly before this Court for resolution.

Covidien attempts to defend the PTAB's final decision, which stemmed from its refusal to consider compelling evidence of the commercial success of the claimed invention, on primarily two grounds: (1) that Ethicon allegedly failed to prove that the Tri-Staple's "unclaimed features," such as "ergonomic design," did not contribute to its success, and (2) that a "tribunal" has not determined that the Tri-Staple is an "infringing" product. But neither was a necessary predicate to the proper consideration of Ethicon's commercial success evidence. As a matter of established law, Ethicon proved enough to be entitled to a presumption of nexus between the Tri-Staple and the invention in the '070 Patent, and Covidien did nothing to rebut that presumption. The evidence of commercial success, reinforced by other unrebutted objective evidence, confirms the nonobviousness of the '070 Patent.

## ARGUMENT

## I.  THIS COURT SHOULD RULE THAT THE PTAB WAS NOT AUTHORIZED TO INSTITUTE THIS IPR

### A.  Section 314(d) Does Not Preclude Review Of This Issue

Ethicon's theory on appeal is straightforward:  the PTAB's erroneous final decision flows from the application of a regulation—delegating the IPR institution decision from the Director to the PTAB (37 C.F.R. § 42.4(a))—that violates the statute.  The PTO argues (Br. 13-17) that this Court lacks jurisdiction to adjudicate the statutory question because the IPR statute provides that "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable."  35 U.S.C. § 314(d).  That stretches § 314(d) too far; it cannot insulate a final PTAB decision that results from a structurally flawed IPR process that was never instituted by "the Director."

This Court's jurisdiction to review "the final written decision of the [PTAB]," *id.* § 319, extends to any error, like the PTO's improper delegation of the institution decision here, that irrevocably taints and manifests in the final decision. The PTO contends (Br. 13-15) that this Court's decisions in *In re Cuozzo Speed Techs., LLC*, 778 F.3d 1271 (Fed. Cir. 2015), *pet. for reh'g en banc pending*, and *In re Hiniker Co.*, 150 F.3d 1362 (Fed. Cir. 1998), preclude the exercise of jurisdiction over challenges to such errors.  But *Cuozzo* and *Hiniker* both addressed errors that pertained *only* to the institution decision and were therefore "washed

3

clean" during the PTAB's final-decision process. *Cuozzo*, 778 F.3d at 1277 (quoting *Hiniker*, 150 F.3d at 1367); *see id.* (recognizing that "the final decision [in *Hiniker*] would have been subject to reversal if it had improperly relied only on prior art presented to the examiner").

The PTO's departure from the statutorily mandated divided decision-making scheme, by contrast, was not "washed clean" in the final decision. In fact, the PTO's unlawful procedure compounded the errors in the PTAB's final determination here. The PTAB panel that rendered the final decision did not and could not undo the fact it had made the decision to institute the IPR proceeding. And the PTO (Br. 16) is incorrect in arguing that a challenger may frame any institution-phase related error as affecting its final determination. *Cuozzo* and *Hiniker* illustrate that in most such challenges—much like an erroneous denial of summary judgment superseded by a trial verdict or judgment as matter of law— any initial error may indeed be "washed cleaned." The PTO's error here was not.

The plain text of § 314(d) confirms its inapplicability here. By its terms, the statute withdraws this Court's jurisdiction only over specific IPR institution "*determination[s]* by *the Director*," not over institution *procedures* resulting in institution determinations by *the PTAB*. Contrary to the PTO's suggestion (Br. 15-16), statutes precluding review of specific determinations do not bar review of the general procedures by which those determinations are made. *See Bowen v. Mich.*

4

*Acad. of Family Physicians*, 476 U.S. 667, 675-76 (1986).  The gravamen of Ethicon's argument, moreover, is that neither *the Director,* nor any officer properly exercising the Director's authority, made the institution determination.  At a minimum, therefore, this Court "must address the merits"—*i.e.*, whether the PTAB may properly exercise the Director's institution authority—to resolve whether § 314(d) bars review.  *Amgen Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004).

Any ambiguity as to § 314(d)'s preclusive effect must be resolved in favor of review given "the strong presumption that Congress intends judicial review of administrative action."  *Bowen*, 476 U.S. at 670.  When a "statute expressly prohibits judicial review," this "presumption dictates that [the statute] must be read narrowly."  *El Paso Natural Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011).  Particularly when *the Director*'s institution *determination* is not being challenged, § 314(d) does not come close to overcoming this presumption, nor does it withdraw from this Court's jurisdiction under § 319 errors that are not "washed clean" but continue to affect the final decision.[1]

---

[1] In the alternative, Ethicon requests that this Court treat its appeal as a petition for writ of mandamus.  *See Cuozzo*, 778 F.3d at 1278 & n.5.  First, there is "no other adequate means to attain the relief" requested if this Court determines that § 314(d) bars review on appeal.  *Id.* at 1278.  Second, because the statute unambiguously precludes the Director from delegating the authority to institute to the PTAB, the "right to issuance of the writ is clear and indisputable."  *Id.*  Third, issuance of the writ is an appropriate exercise of this Court's authority to correct a systemic legal error that, under the PTO's theory, would otherwise evade review.  *Id.*

### B.     Ethicon Did Not Forfeit Its Challenge

#### 1.     Presenting the Issue to the Agency Would Have Been Futile

As an initial matter, "requirements of administrative issue exhaustion are largely creatures of statute." *Sims v. Apfel*, 530 U.S. 103, 107 (2000). Here, no statute requires presentation of issues to the PTAB (or PTO) in order to preserve them for judicial review. In the absence of a statutory exhaustion requirement, courts have required, as a prudential matter, the presentation of specific issues to an agency in order to serve two primary purposes: giving the "'agency an opportunity to correct its own mistakes'" and "promot[ing] judicial efficiency, as '[c]laims generally can be resolved much more quickly and economically in proceedings before [the] agency.'" *In re DBC,* 545 F.3d 1373, 1378-79 (Fed. Cir. 2008) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)) (last two alterations in original).

Neither purpose is served when presentation of an issue to the agency would have been futile. That is why a longstanding exception to the prudential exhaustion requirement is that a "party need not exhaust his administrative remedies where invoking such remedies would be futile." *Asociacion Colombiana de Exportadores de Flores v. United States*, 916 F.2d 1571, 1575 (Fed. Cir. 1990); *see also Omnipoint Corp. v. FCC*, 78 F.3d 620, 635 (D.C. Cir. 1996) (noting futility where Commission appeared wedded to its procedure).

Neither the PTO nor Covidien disputes that exception.  Rather, both contend that exhaustion was not futile here, listing ways in which Ethicon purportedly could have raised the institution issue.  Because the binding PTO regulation at issue precludes any entity other than the PTAB from instituting review, however, it would have been futile for Ethicon to contest the regulation in its preliminary response to the IPR petition, a request for rehearing of the institution decision, its response to the petition on the merits, or in a request for rehearing of the final written decision (PTO Br. 18; Cov. Br. 25 n.2).  *See DGR Assocs., Inc. v. United States*, 690 F.3d 1335, 1340 (Fed. Cir. 2012) (regulations "bind the agency itself").

The PTO (Br. 19) and Covidien (Br. 25) suggest that because the Director is a member of the PTAB, 35 U.S.C. § 6(a), she could have been petitioned to assign the decision to herself.  That position cannot be reconciled with the regulation's text providing that "[t]he Board institutes the trial on behalf of the Director."  37 C.F.R. § 42.4(a).  It would render the regulation meaningless if the regulation is to be read as "[t]he *Director* institutes the trial on behalf of the Director."  *See Glover v. West*, 185 F.3d 1328, 1331 (Fed. Cir. 1999) (rejecting interpretation that "would render most of the regulation's language meaningless").

The PTO's contention (Br. 19) that the Director could have suspended the rules also lacks merit.  The Director may suspend a regulation only "[i]n an extraordinary situation."  37 C.F.R. § 1.183.  Ethicon could not have identified an

"extraordinary" situation in its case because this was an *ordinary* situation—for *every* petition to institute *inter partes* review, the statute commands that the Director make the institution decision.

The suggestion that Ethicon could have obtained assignment of the final decision to a different panel of the PTAB (PTO Br. 19; Cov. Br. 25) is misplaced for a different reason. Even if assignment to a different PTAB panel might have ameliorated *some* of the concerns motivating Congress's decision to assign institution to the Director and final adjudication to the PTAB, it would not have negated others and, in any event, is no substitute for compliance with the statute.

### 2. Alternatively, Exhaustion Should Be Excused to Resolve this Pressing Legal Question

The validity of the PTO's IPR-institution regulation presents a purely legal issue falling outside the PTAB's special expertise. This Court has excused any exhaustion requirement in analogous circumstances. *See, e.g.*, *Thomson Consumer Elecs., Inc. v. United States*, 247 F.3d 1210, 1215 (Fed. Cir. 2001); *see also Noel Canning v. NLRB*, 705 F.3d 490, 497-98 (D.C. Cir. 2013) (adjudicating recess appointments challenge despite failure to exhaust), *aff'd* 134 S. Ct. 2550 (2014).

The PTO contends (Br. 21) that the PTAB routinely considers constitutional and statutory challenges, but does not identify any special expertise that the PTAB could have offered. The PTO's intervention here amply allows it to provide its

reasoning; after all, it is the PTO's rationale in adopting the regulation—and not the PTAB's recognition of the obligation to follow it—that matters.

As the PTO and Covidien do not dispute, even assuming the issue had been forfeited, this Court "retain[s] discretion to reach issues raised for the first time on appeal." *In re DBC*, 545 F.3d at 1379. To be sure, this Court in *DBC* declined to do so. But that was in part because the appellant had not alleged any harm flowing from the PTO's error, and Congress had already taken "action in fixing the problem prospectively," so this Court's decision would not have "affect[ed] cases decided by future panels of the Board." *Id.* at 1381. Not so here. This Court should decide the validity of the PTO's regulation now, before unlawful institution decisions lead to more erroneous final decisions in pending IPR cases, and before unlawful institution decisions are made in new ones.[2]

## II.    THE DIRECTOR MAY NOT DELEGATE HER DUTY TO INSTITUTE IPRS TO THE PTAB

Allowing the PTAB both to institute and to conduct *inter partes* review violates the statutory scheme that Congress designed. Covidien and the PTO

---

[2] The PTO proposes to develop a "pilot program" of having a single PTAB member make institution decisions where, if review is instituted, that member would remain on the panel that makes the final decision. *See* Michelle K. Lee, *PTAB's Quick-Fixes for AIA Rules Are to Be Implemented Immediately*, Director's Forum: A Blog from USPTO's Leadership (Mar. 27, 2015), http://www.uspto.gov/blog/ (last visited May 11, 2015). This process still would fail to comport with Congress's intent and would not negate the bias flowing from the institution decision, because the institution decisionmaker would remain on the final panel.

attempt to reframe the issue as a challenge to the breadth of the Director's authority to delegate her duties.  But Ethicon agrees (Br. 29) that the Director need not personally make IPR institution decisions.  The key point, as all three parties also agree, is that the Director may *not* delegate her duties if the delegation conflicts with congressional intent and the statutory structure.  *See* Opening Br. 29; PTO Br. 22-23; Cov. Br. 28.  That is the case here.  The AIA and the Patent Act as a whole, informed by basic principles of statutory interpretation, administrative law, and due process, prohibit the Director from delegating the institution duty to the PTAB.

### A.    The IPR Statute Prohibits Collapsing The Divided Decision-Making Duties Of The Director And The PTAB

The plain terms and structure of the AIA divide decision-making authority for the two phases of the IPR process between two different decisionmakers:  the Director is assigned the institution function, whereas the PTAB is assigned the final adjudication function.  *See* Opening Br. 4-5, 27-28.  Because the PTO's delegation of the institution function to the PTAB contravenes that clear and congressionally mandated division, it is invalid.  *Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).  Four features of the Act's text, context, and purpose confirm that conclusion.

*First*, the AIA expressly requires "the Director" to make the institution decision and "the PTAB" to render the final decision on the merits.  35 U.S.C.

§§ 314(a), 316(c). This Court has confirmed that division of decision-making. *See St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375 (Fed. Cir. 2014).[3] Allowing the Director to delegate to the PTAB her duty to institute an IPR violates that well-defined dichotomy.

*Second*, unlike other provisions addressing two-phase review, Congress provided no role for the PTAB within the IPR institution function. Covidien insists (Br. 34) that the derivation statute proves that even when Congress assigns institution to the Director, it intends to confer coextensive authority on the PTAB. But by expressly providing that the PTAB may take one specific action at the institution stage in derivation proceedings, the statute reinforces that when Congress intends the Director and PTAB to share institution-phase authority, it does so expressly. *See* 35 U.S.C. § 135(c) (authorizing the PTAB to "defer action on a petition for a derivation proceeding, or stay the proceeding after it has been instituted"). Congress has provided no such authority with respect to IPR institution decisions.

*Third*, Congress set up a system where two independent administrative decisions were to be made based on two different evidentiary records. *Id*. §§ 312, 313, 314(a); *see* Opening Br. 31-33. This Court has repeatedly cautioned tribunals against drawing obviousness conclusions without considering all of the evidence—

---

[3] This Court noted the Director's purported delegation, *see St. Jude*, 749 F.3d at 1375 n.1, but did not comment on its propriety.

precisely what the PTO's revamped regime invites. *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1075-77 (Fed. Cir. 2012).

*Fourth*, divided decision-making comports with Congress's intent to impose a higher threshold standard for institution of IPRs. Contrary to the PTO's suggestion (Br. 31-33), Congress was not concerned solely with speed and efficiency; it also sought to create a fair proceeding that protects patent owner rights. *See, e.g.*, 157 Cong. Rec. S1374-S1375, S1380 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl) (noting that "elevated thresholds for instituting inter partes and post-grant reviews" in the AIA in part would "move us toward a patent system that is objective, transparent, clear, and fair to all parties"); *id.* at S951-S952 (daily ed. Feb. 28, 2011) (statement of Sen. Grassley) (noting that the "higher threshold for initiating [IPR]" in the AIA would "prevent a challenger from using the process to harass patent owners").

More importantly, legislative history provides no reason to disregard the clear command to separate the PTAB's adjudication function from the Director's institution function. Both the PTO and Covidien cherry-pick from a floor statement by Representative Smith suggesting that "judges" would institute covered business method (CBM) review. But a single sentence plucked out of context from the Congressional Record—a floor statement at that—cannot

12

overcome the clear demarcation of decision-making authority in §§ 314 and 316(c). *See Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring) (such use of legislative history is "the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends"). In any event, read in context, Rep. Smith proceeds from the premise that business method patents (the subject of his statement) are presumptively *invalid*, and exist only because of this Court's "activist" decision in *State Street Bank. See* 157 Cong. R. E1183-84 (daily ed. June 23, 2011). Despite paying lip service to the importance of the institution decision, Rep. Smith's statement about CBM proceedings shows no concern for the protection of patent owner rights—something the rest of Congress valued when creating the IPR process.

Both Covidien (Br. 30-31) and the PTO (Br. 25) also rely on the Director's authority to promulgate rules for the "[c]onduct of inter partes review," 35 U.S.C. § 316, and the more general authority to promulgate regulations "not inconsistent with law," *id.* § 2(b)(2). But the only authority that those rules confer relating to institution decisions, as opposed to the standards and procedures governing the conduct of IPR proceedings, is to "set[] forth the standards for the showing of sufficient grounds to institute a review under section 314(a)." *Id.* § 316(a)(2). Because neither provision purports to license the Director to override the basic division of decision-making duties in the IPR statute, the regulation that shifts the

institution function from the Director to the PTAB exceeds the authority conferred therein.[4]

### B. The Director's Constrained Authority To Delegate To Secretarial Appointees Forecloses The PTO's Institution Rule

Congress's specific grant of authority to the Director to freely authorize and delegate her duties to the officers and employees she hires under § 3(b)(3)(B) indicates that Congress did not intend that authority to extend so far with respect to the select group of statutory officers appointed by the Secretary of Commerce under §§ 3(b), 5, and 6. *See* Opening Br. 29. Congress has defined the authority and duties of the latter group of officers, including the PTAB. 35 U.S.C. § 6(b). It follows that any tasks the Director assigns to those officers must be consistent with their statutorily-assigned authority. For the PTAB, those functions consist of "conduct[ing]," not instituting, IPR proceedings. *Id.* § 6(b)(4). That forecloses the PTO's rule requiring the PTAB to institute IPRs.

The PTO's arguments to the contrary do not withstand scrutiny. *First*, the PTO cites *United States v. Mango*, 199 F.3d 85, 90 (2d Cir. 1999), to argue that § 3(b)(3)(B) exists as "an affirmative recognition of authority, not a limit on the

---

[4] Covidien insists, citing *In re Alappat*, 33 F.3d 1526, 1535 (Fed. Cir. 1994), that the PTAB's exercise of institution authority is permissible because the Director still "may exercise her influence when necessary." Br. 29-30. But the mechanisms for exercising influence cited in *Alappat*—such as controlling the PTO's position in any appeal—are both insufficient and inapt here, where the PTO maintains that the institution decision is itself never appealable.

14

Director's authority." PTO Br. 27. Putting aside that the statute at issue in *Mango* did not address delegation authority directly, the Second Circuit recognized that "a specific grant of power to an executive official to delegate a function to a named subordinate may be persuasive evidence that Congress did not intend subdelegation to any other official." 199 F.3d at 90.

The PTO insists (Br. 25) that a "clear and affirmative expression" by Congress is required to limit the delegation of executive authority. But, as the PTO also recognizes (Br. 23), Congress may limit the power to delegate "by implication" if the limitation can "be fairly inferred from the history and content of the Act." *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 121-22 (1947). That is precisely the case here. For example, § 3(b)(3) expressly grants authority to freely delegate all duties only to a select group, which does not include the PTAB. *See United States v. Giordano*, 416 U.S. 505, 513-16 (1974) (holding that authorization to delegate any of the Attorney General's functions to "any other officer, employee, or agency" did not allow him to delegate the power to apply for a wiretap because a more specific statute conferred that power on select officials). In *Cudahy Packing Co. v. Holland*, 315 U.S. 357 (1942), the Supreme Court examined a statute that expressly granted authority to delegate investigation powers, but did not expressly grant authority to delegate subpoena power. The Court held that "it seems … fairly inferable that the grant of authority to delegate

the power of inspection, and the omission of authority to delegate the subpoena power, show a legislative intention to withhold the latter." *Id.* at 364; *see also Halverson v. Slater*, 129 F.3d 180, 185-86, 188-89 (D.C. Cir. 1997) (rejecting argument that general delegation authority permitted delegation not authorized under more limited delegation provision).

Although this case involves an express grant of authorization and delegation power that omits certain officials, rather than certain duties, the primary lesson of *Cudahy* applies: the omission has significance. The Court in *Fleming* upheld the delegation of subpoena power in that case only because the statute at issue was *silent* regarding the agency head's authority to delegate any of his duties; it distinguished *Cudahy* because there "the Act made expressly delegable the power to gather data and make investigations, thus lending support to the view that when Congress desired to give authority to delegate, it said so explicitly." 331 U.S. at 121. This Court's conclusion in *Splane v. West*, 216 F.3d 1058, 1066 (Fed. Cir. 2000), that an agency head's ability to delegate "depends on whether Congress has expressly granted the power to delegate" is thus faithful to the line drawn in *Cudahy* and *Fleming*. Indeed, the "history and content of the Act," *Fleming*, 331 U.S. at 122, point strongly to a limit on the Director's delegation authority here because of Congress's express distinction of the PTAB's role in adjudicating IPRs from the Director's role in instituting them.

The PTO's view of the Director's plenary delegation power over *all* agency personnel, moreover, would render § 3(b)(3)(B) superfluous.  As the Supreme Court has repeatedly recognized, courts must avoid, whenever possible, interpretations that would render any statutory language mere surplusage.  *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009) (rejecting government's statutory interpretation because it was "at odds with one of the most basic interpretive canons, that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant'" (citation omitted; alteration in original)).  And the Supreme Court has applied that "most basic" canon specifically in the delegation context.  *See Cudahy*, 315 U.S. at 361 (rejecting statutory interpretation that would "give[] the Administrator unrestricted authority to delegate" when that interpretation "would render meaningless and unnecessary the provisions of" another statute); *see also Halverson*, 129 F.3d at 185.  The lack of any explicit, all-encompassing grant of delegation authority to the Director makes the canon's application especially forceful here.

*Second*, reading the Patent Act to require that any delegation by the Director to statutory officials (like the PTAB) comport with the official's statutory authority would not, as the PTO argues (Br. 27), lead to "absurd" results.  The PTO suggests (Br. 27-28) that Ethicon's interpretation cannot be correct because that would leave

17

the Deputy Director with no duties. Not so. The Deputy Director is "vested with the authority to act in the capacity of the Director in the event of the absence or incapacity of the Director." 35 U.S.C. § 3(b)(1). That provision vests the Deputy Director with authority commensurate to that of the Director; the condition of the Director's "absence" need only mean that such authority is to be exercised when instructed to do so by the Director.[5] Similarly, Congress broadly vested the Commissioner of Patents with authority relating to the management and operations of the patent office. *Id.* § 3(b)(2). By virtue of their statutory authority, either of those officers could carry out virtually any patent-related duties the Director requests.

It is the PTO's and Covidien's unbounded view of the Director's delegation authority that would lead to absurd results. If one ignores the limitations implicit in § 3(b) and the statutorily defined duties of officers appointed by the Secretary, the Director, for example, could delegate the duty to manage the processing and routine examination of patent applications to the Commissioner of Trademarks. Congress could not have intended such a delegation when it created the

---

[5] This commonsense reading is supported by the presumption that creation of a deputy or assistant implicitly grants authority commensurate with the agency head. *See Parish v. United States*, 100 U.S. 500, 505 (1879) (Assistant Surgeon General). In contrast, Congress vested the PTAB with a narrower universe of statutory authority.

Commissioner of Trademarks to "serve as the chief operating officer[] for the operations of the Office relating to … trademarks." *Id.* § 3(b)(2)(A).

Because Congress assigned specific and discrete authority to the PTAB, *see id.* § 6(b), any delegation by the Director must be consistent with the scope of that authority—as well as with the precise limits in the IPR statute itself. With respect to IPRs, Congress conferred only the authority to "conduct" the IPR proceeding once instituted. *Id.* § 6(b)(4). Indeed, nearly all of the PTAB's statutory duties pertain to final adjudications or reviewing decisions on appeal. *Id.* § 6(b)(1)-(4). The Director's delegation of IPR institution authority to the PTAB conflicts with Congress's statutory scheme.

*Third*, Ethicon's interpretation does not unduly hamstring the Director. Pursuant to § 3(b)(3)(B), the Director may authorize and delegate any of her tasks to the thousands of employees and officers she hires. And she may assign tasks to the other statutory officers appointed by the Secretary so long as those tasks fall within the authority vested in those offices by Congress. Consistent with this statutory framework, the Director could delegate her duty to institute IPRs to the Deputy Director, the Commissioner of Patents, or any employees she hires and authorizes. But she may not delegate the institution function to the PTAB when Congress expressly assigned the PTAB a distinct role as final adjudicator

(§§ 316(c), 318(a)) and when the statutory authority Congress gave the PTAB reaches only the final adjudication of IPRs (§ 6(b)(4))—not their institution.

### C. Basic Administrative Law And Due Process Principles Reinforce That The PTAB May Not Institute IPRs

Basic principles of administrative law and due process underscore the error in the PTO's interpretation of the IPR statute.  *See* Opening Br. 34-43.  As the Supreme Court has recognized, the default administrative law rule for federal agencies is to *separate* investigation from adjudication.  *Withrow v. Larkin*, 421 U.S. 35, 52 (1975).  That principle is codified in the Administrative Procedure Act, which prohibits an "employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case" from "participat[ing] or advis[ing] in the decision."  5 U.S.C. § 554(d) (exempting agency heads).  The PTO's statutory interpretation allowing placement of IPR institution and final adjudication duties in the same PTAB panel departs from that default requirement.  Congress must speak clearly to support such a departure, and it has done the opposite here.

To the extent the institution step is viewed as more "adjudicative" than "investigative," the PTAB's successive decision-making duties under the PTO's reconfigured IPR scheme raises even greater due process concerns.  *See Withrow*, 421 U.S. at 51 (the question whether "those who have investigated should not then adjudicate" is "substantial"); *id.* at 58 & n.25 ("Allowing a decisionmaker to

review and evaluate his own prior decisions raises problems that are not present" in a case addressing the "combination of investigative and adjudicative functions … without more.").

The PTO responds (Br. 35-36) with a list of examples in which an entity makes an initial decision under one standard and a later decision under a different standard. But all those examples are inapposite because none contains the *combination* of features that heightens the risk of bias here: a one-sided evidentiary record for the initial decision accompanied by a full written decision explaining and justifying that initial decision. *See* Opening Br. 36-39.

Notably, neither Covidien nor the PTO responds to the exceedingly low percentage of final adjudications that differ from the institution decision, *see* Opening Br. 38, or to the widespread commentary in the patent community recognizing the very real risk of bias that the PTO's scheme has created. Nor do they address the fact that PTO regulations elsewhere recognize the inherent risk of bias if the same decisionmaker were to render both an institution decision and a subsequent merits decision. *See* 37 C.F.R. § 1.525(a) ("*ex parte* reexamination will ordinarily be conducted by an examiner other than the examiner responsible for the initial determination under §1.515(a)").

Contrary to Covidien's argument (Br. 40-41), Ethicon need not establish that a PTAB panel is "necessarily biased" for this Court to consider the weighty

fairness considerations at issue.  Because the delegation of the institution function to the PTAB creates "grave doubts," *Rust v. Sullivan*, 500 U.S. 173, 191 (1991), as to whether there is an "intolerably high" risk of unfairness, *Withrow*, 421 U.S. at 58, any statutory ambiguity must be resolved in favor of precluding that delegation.

## III.  THE PTAB'S LEGAL ERRORS ON THE OBJECTIVE INDICIA LED TO AN ERRONEOUS OBVIOUSNESS DETERMINATION

Covidien contends that (1) a presumption of nexus is proper only where "every feature of the product is necessarily claimed," and (2) a competitor's product may demonstrate commercial success only after a tribunal has made a prior determination of "infringement."   The law, however, requires neither predicate.  Here, Ethicon properly established a prima facie case of nexus sufficient to trigger the presumption and to shift the burden of production, and Covidien did nothing to rebut it.  The PTAB's failure to consider that unrebutted evidence led to its erroneous obviousness determination.

### A.  Ethicon Did Not Waive Its Presumption Argument

Covidien initially contends (Br. 44-45) that Ethicon waived its presumption of nexus argument.  But it is undisputed that Ethicon raised this issue in its Patent Owner Response:    "[a] presumption arises that the patented invention is commercially successful '[w]hen a patentee can demonstrate commercial success, usually shown by significant sales in a relevant market, and that the successful

product is the invention disclosed and claimed in the patent.'" A877 (citation omitted). Ethicon then proved exactly that: the Tri-Staple had significant sales in the stapler market, and the device is the instrument claimed in the '070 Patent. A970-71; A965-66; A1119-1125. Ethicon also argued this issue at the hearing. A2280-82.

Covidien further argues (Br. 45) that waiver rules ensure that all parties have the opportunity to offer relevant evidence. But Covidien had precisely that opportunity here. Ethicon presented case law, argument, and evidence supporting a presumption of nexus. Covidien failed to introduce additional evidence in its reply brief and to engage on that issue at oral argument. Ethicon did not waive this argument.

### B.    Covidien Misunderstands The Presumption Of Nexus

Covidien also asks (Br. 45-46) this Court to distinguish between "what is required for a presumption of nexus … as opposed to showing prima facie nexus in the ordinary course." But the law makes no such distinction:

> [A] presumption arises that the patented invention is commercially successful "[w]hen a patentee can demonstrate commercial success, usually shown by significant sales in a relevant market, and that the successful product is the invention disclosed and claimed in the patent."

*Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1377 (Fed. Cir. 2000) (quoting *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir.

1997)).  This is the same test for proving a "prima facie case" of nexus.  *See Crocs,*

*Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1310-11 (Fed. Cir. 2010).  This Court

thus has explained that the presumption of nexus necessarily follows from a prima

facie case:  "[t]he phrase 'prima facie case' … may be used by courts to describe

the plaintiff's burden of producing enough evidence *to permit the trier of fact to*

*infer the fact at issue*."  *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851

F.2d 1387, 1392 (Fed. Cir. 1988) (citation omitted; emphasis added).

Covidien argues (Br. 48) otherwise in an attempt to require Ethicon to prove

that "every feature of the [Tri-Staple] product is necessarily claimed" in the '070

Patent.  Covidien contends (Br. 48-49) that Ethicon cannot do so because of Tri-

Staple's "unclaimed features," *e.g.,* "ergonomic design" and "precise articulation."

Covidien's position is unsupportable.  If it were enough for a patent challenger to

point to "unclaimed features" such as "ergonomic design," a patentee could *never*

make a prima facie case of nexus.  Instead, the law requires that the successful

product "is the invention disclosed and claimed in the patent"—in other words, that

the product is "coextensive" with the claims.  *Demaco*, 851 F.2d at 1392.  A

product might *not* be coextensive with the patented invention when "the patented

invention is only a component of a commercially successful machine or process."

*Id*.

24

Ethicon's expert provided detailed testimony explaining how the Tri-Staple surgical stapling device is the "surgical stapling device" of claims 8 and 10 of the '070 Patent, that the product has been hugely successful, and that its commercial success "is attributable to the innovative combination claimed in the '070 Patent which includes non-parallel staples and different preformed and formed heights." A965-66; A890; A1119-1125; A970-71.  This evidence was more than sufficient to prove a prima facie case entitling Ethicon to a presumption of nexus.  *See, e.g, Brown & Williamson Tobacco Corp. v. Phillip Morris Inc.*, 229 F.3d 1120, 1129 (Fed. Cir. 2000) ("a nexus should be presumed because the Capri encompasses the claimed features); *Crocs*, 598 F.3d at 1310 ("Because … Crocs shoes practice the '858 patent and … were commercially successful, Crocs established a prima facie case of nexus.").

Ethicon nonetheless introduced additional evidence of nexus, showing that the Tri-Staple (embodying the claims) commanded a market premium over the Legacy device (not embodying the claims), and quickly outsold the Legacy device. A965-66; A968-69; A971.  "When a patented product commands a market premium over a similar product that does not practice the patented feature, this provides evidence that a nexus exists between the claimed invention and the patented product's commercial success." *Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 970 F. Supp. 2d 1229, 1239 (D. Utah 2013) (citing *Transocean Offshore*

*Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1350 (Fed. Cir. 2012)); *see also ArcelorMittal Fr. v. AK Steel Corp.*, 700 F.3d 1314, 1326 (Fed. Cir. 2012).   In light of Ethicon's evidence, the burden shifted to Covidien to produce rebuttal evidence.  Covidien did not even attempt to meet that burden.

### C.    Commercial Success Need Not Be Predicated On An "Infringement" Determination

Covidien also posits that (Br. 50-51), to use a competitor's product as proof of commercial success, a prior tribunal must have made a finding of "infringement."  No such requirement exists.  The cases Covidien cites do not "recognize that an infringement determination is a condition to relying on the commercial success of a competitor's product."  Cov. Br. 51.  Instead, those cases stand for the unremarkable proposition that a finding of infringement is one way to show the claims cover the product in question.[6]   Covidien provides no legal or logical support for imposing this additional "condition" when a patentee shows nonobviousness by the success of a third party's product rather than success of its own product.  If anything, this case shows why such a condition makes no sense; it is *Covidien*, not Ethicon, that possesses the majority of evidence related to the Tri-Staple.   After Ethicon showed the successful Tri-Staple embodied the claims,

---

[6] Similarly, a finding of noninfringement precludes a showing that success of the accused product shows nonobviousness.  *See J.T. Eaton & Co.*, 106 F.3d at 1570-71.

Covidien could have come forward with rebuttal evidence, if it existed, to disprove nexus—yet it stayed silent.

Moreover, requiring a tribunal to have issued a predicate "infringement" determination would mean that the PTAB, as well as patent examiners, would be routinely—and improperly—precluded from evaluating relevant evidence on objective indicia of nonobviousness. *Cf. Transocean*, 699 F.3d at 1349 ("[S]econdary considerations must always when present be considered en route to a determination of obviousness." (internal quotation marks omitted)). Such evidence is often presented as an affidavit describing a successful product. *See* MPEP § 716.01(a) (9th ed. Mar. 2014).

To assess obviousness, the PTAB is free to determine whether a successful product is covered by the claims. Here, the PTAB rejected Covidien's lone argument—unsupported by expert evidence—that the Tri-Staple's "*fixed* anvil" is not "non-pivotable," never even mentioning that point and in no way impugning Ethicon's unrebutted expert evidence that the Tri-Staple is the device of claims 8 and 10 of the '070 Patent. A18-19. But the PTAB then went on to make other errors in its analysis—faulting Ethicon, not Covidien, for failing to show the commercial success was not due to something other than the claimed features,

27

without citing any *evidence* that would support shifting that burden back to Ethicon. A19; *supra* § III.B.[7]

### D.    Ethicon Proved Long-Felt but Unresolved Need

Covidien argues (Br. 55) that Ethicon defined long-felt need too broadly as "stapling tissues of different thicknesses." It contends, with no evidentiary support, that the solution to that problem "was well known before." But that problem existed in the industry, A942-43; A972-74, and is the very problem *Covidien* claimed its Tri-Staple solved. A1288.

Covidien also argues (Br. 55) that somehow the Covidien "Legacy" devices meet this need because they "still sell over 100,000 units a month." First, it does not matter how many units of the Legacy device are sold if the Legacy device does not meet the particular need. In *Media Technologies Licensing, LLC, v. Upper Deck Co.*, 596 F.3d 1334, 1338 (Fed. Cir 2010), the patent owner had defined the need as "stimulating demand" and admitted that the prior product, which was still in use, "generated interest." Here, Covidien failed to introduce any evidence the Legacy products satisfy the need. Second, Covidien's own brochure, A1288, contradicts its position. That brochure acknowledged that the long-felt need existed until the introduction of the Tri-Staple, which was *after Covidien's*

---

[7] Like the PTAB, Covidien erroneously contends (Br. 52-53) that if the elements of the claimed invention are individually known in the prior art, nexus can never be shown. That is not the law. *See* Opening Br. 53-54.

*introduction of the Legacy devices*.   Moreover, sales of the Tri Staple quickly outpaced sales of the Legacy device.  A971.  The PTAB erred by framing the long-felt need as a need to create the exact invention (Opening Br. 57), and then erred by disregarding Ethicon's unrebutted evidence.

### E.     The Unrebutted Evidence Of Nonobviousness Compels Reversal

Covidien seeks (Br. 56) to support the PTAB's decision by contending that there was a "strong motivation" to combine the prior art and that the invention was "obvious to try," yet it fails to address the undisputed real-world evidence showing the opposite.  For example, Covidien's brief ignores that its expert, Mr. Bolanos, worked with the inventors of the prior art, A1309; A1355-57, but none combined those elements to create the claimed invention.  *See Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1546 (Fed. Cir. 1984).

The undisputed "real-world" evidence in this case proves that there was no "strong case of obviousness."  The PTAB fell into the trap of hindsight, made significant legal errors leading to its failure to consider unrebutted objective evidence of nonobviousness, and simply reaffirmed its institution decision.  This Court should make the legal determination of nonobviousness based on the entire record.  In view of the strong evidence showing nonobviousness, including the overwhelming commercial success of the Tri-Staple, this Court should reverse.

## CONCLUSION

The final written decision of the PTAB should be reversed.


Dated:  May 11, 2015                    Respectfully submitted,



By: */s/ Steven D. Maslowski*
    Steven D. Maslowski
    Ruben H. Munoz
    Jason Weil
    AKIN GUMP STRAUSS HAUER & FELD LLP
    Two Commerce Square
    2001 Market Street, Suite 4100
    Philadelphia, PA 19103-7013
    Phone:  (215) 965-1200
    Fax:  (215) 965-1210

    Pratik A. Shah
    Hyland Hunt
    AKIN GUMP STRAUSS HAUER & FELD LLP
    1333 New Hampshire Avenue, N.W.
    Washington, DC 20036-1564
    Phone: (202) 887-4000
    Fax: (202) 887-4288

    *Counsel for Appellant*
    *Ethicon Endo-Surgery, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Federal Circuit Rule 32(b), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) and Federal Circuit Rule 32(b).

1.     Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32(b), the brief contains 6,932 words.

2.     This brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied on the word count feature of Microsoft Word in preparing this certificate.

Dated: May 11, 2015                    /s/ Steven D. Maslowski
                                       Steven D. Maslowski

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Brief for Appellant with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system this 11th day of May, 2015, and served a copy on counsel of record by the CM/ECF system and by electronic mail.

Dated:   May 11, 2015                                    /s/  Steven D. Maslowski
                                                              Steven D. Maslowski