2014-1771

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

––––––––––––––––––––

ETHICON ENDO-SURGERY, INC.,

Appellant,

v.

COVIDIEN LP,

Appellee.

––––––––––––––––––––

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK
OFFICE, PATENT TRIAL AND APPEAL BOARD IN NO. IPR2013-00209

––––––––––––––––––––

BRIEF FOR INTERVENOR – DIRECTOR
OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

––––––––––––––––––––

NATHAN K. KELLEY
*Solicitor*

SCOTT C. WEIDENFELLER
STACY B. MARGOLIES
*Associate Solicitors*
*Office of the Solicitor – Mail Stop 8*
*U.S. Patent and Trademark Office*
*P.O. Box 1450*
*Alexandria, Virginia  22313-1450*

BENJAMIN C. MIZER
*Acting Assistant Attorney General*

MARK R. FREEMAN
KATHERINE TWOMEY ALLEN
*(202) 514-5048*
*Attorneys, Appellate Staff*
*Civil Division, Room 7325*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C.  20530*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES

STATEMENT OF JURISDICTION ................................................................. 1

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE ................................................................. 2

A.    INTRODUCTION ................................................................. 2

B.    STATUTORY AND REGULATORY BACKGROUND ................................. 3

    1.    Structure Of The PTO ................................................................. 3

    2.    Inter Partes Review ................................................................. 5

C.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................... 7

SUMMARY OF ARGUMENT ................................................................. 9

STANDARD OF REVIEW ................................................................. 12

ARGUMENT ................................................................. 12

I.    THIS COURT LACKS JURISDICTION TO REVIEW THE DIRECTOR'S DECISION TO INSTITUTE AN INTER PARTES REVIEW OF THE '070 PATENT ................................................................. 13

II.    ETHICON WAIVED ITS CHALLENGE TO THE INTER PARTES REVIEW PROCESS ................................................................. 17

III.    THE DIRECTOR PROPERLY DELEGATED INSTITUTION DECISIONS TO THE BOARD ................................................................. 22

    A.    The Director's Delegation Is Consistent With The Established Background Principle That Executive Authority Is Delegable To Subordinates ................................................................. 22

B. Ethicon Cannot Show That Congress Intended To
Prohibit Delegations To The Board ........................................................... 26

C. The PTO's Procedures Do Not Raise Due Process Concerns ............... 34

CONCLUSION ............................................................................................................. 37

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                 **Page**

*Altana Pharma AG v. Teva Pharms. USA, Inc.,*
  566 F.3d 999 (Fed. Cir. 2009) .................................................. 36

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
  467 U.S. 837 (1984) ................................................................ 12

*Cudahy Packing Co. v. Holland,*
  315 U.S. 357 (1942) ................................................................ 25

*Fleming v. Mohawk Wrecking & Lumber Co.,*
  331 U.S. 111 (1947) ........................................................23, 24, 30

*Freytag v. Comm'r,*
  501 U.S. 868 (1991) ................................................................ 21

*In re Alappat,*
  33 F.3d 1526 (Fed. Cir. 1994) .................................................. 25

*In re Cuozzo Speed Techs., LLC,*
  No. 14-1301, __ F.3d __, 2015 WL 448667
  (Fed. Cir. Feb. 4, 2015)........................... 6, 7, 9, 12, 13, 14, 15, 16

*In re DBC,*
  545 F.3d 1373 (2008) ................................................. 9, 18, 20, 21

*In re Dominion Dealer Solutions, LLC,*
  749 F.3d 1379 (Fed. Cir. 2014) ................................................ 33

*In re Hiniker Co.,*
  150 F.3d 1362 (Fed. Cir. 1998).........................................14, 15, 16

*In re Procter & Gamble Co.,*
  749 F.3d 1376 (Fed. Cir. 2014) ................................................ 33

*Inland Empire Pub. Lands Council v. Glickman,*
  88 F.3d 697 (9th Cir. 1996).............................................29, 30

*Kobach v. U.S. Election Assistance Comm'n,*
   772 F.3d 1183 (10th Cir. 2014) ................................................................... 23

*Litecubes, LLC v. Northern Light Prods., Inc.,*
   523 F.3d 1353 (Fed. Cir. 2008) ................................................................... 12

*NEC Corp. v. United States,*
   151 F.3d 1361 (Fed. Cir. 1998) ................................................................... 36

*Nuclear Energy Inst., Inc. v. EPA,*
   373 F.3d 1251 (D.C. Cir. 2004) ................................................................... 18

*Parish v. United States,*
   100 U.S. 500 (1879) ................................................................................... 23

*Shook v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.,*
   132 F.3d 775 (D.C. Cir. 1998) ................................................................... 27

*Splane v. West,*
   216 F.3d 1058 (Fed. Cir. 2000) ................................................................... 25

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.,*
   749 F.3d 1373 (Fed. Cir. 2014) .............................................. 5, 6, 7, 16, 33

*U.S. Telecom Ass'n v. FCC,*
   359 F.3d 554 (D.C. Cir. 2004) ........................................................10, 23, 26

*United States v. Giordano,*
   416 U.S. 505 (1974) ..............................................................................24, 34

*United States v. L.A. Tucker Truck Lines,*
   344 U.S. 33 (1952) ..................................................................................... 18

*United States v. Mango,*
   199 F.3d 85 (2d Cir. 1999) ......................................................................27, 31

*Withrow v. Larkin,*
   421 U.S. 35 (1975) ................................................................. 11, 34, 35, 36

*Woodford v. Ngo*,
  548 U.S. 81 (2006) ........................................................................................ 18

**Statutes:**

The Leahy-Smith America Invents Act,
  Pub. L. No. 112-29, 125 Stat. 284 (2011) ................................................ 3, 6

15 U.S.C. § 1067 ............................................................................................. 3

28 U.S.C. § 1295(a)(4)(A) .............................................................................. 1

35 U.S.C. § 1(a) ............................................................................................... 3

35 U.S.C. § 2(b)(2) ........................................................................................ 25

35 U.S.C. § 3(a) ............................................................................................... 3

35 U.S.C. § 3(a)(1) ........................................................................................ 25

35 U.S.C. § 3(b)(1) ..................................................................................... 3, 27

35 U.S.C. § 3(b)(2) ..................................................................................... 3, 27

35 U.S.C. § 3(b)(3) ..................................................................................... 4, 27

35 U.S.C. § 3(b)(6) ........................................................................................ 25

35 U.S.C. § 6(a) ...............................................................................3, 4, 25, 29

35 U.S.C. § 6(c) ............................................................................................. 21

35 U.S.C. § 102 ............................................................................................... 7

35 U.S.C. § 103 ............................................................................................... 7

35 U.S.C. § 131 .......................................................................................... 3, 30

35 U.S.C. §§ 131-33 (2000) .......................................................................... 31

35 U.S.C. § 132(a) ................................................................................ 30

35 U.S.C. § 141(c) ........................................................................ 6, 13, 15

35 U.S.C. § 143 ............................................................................... 2, 20

35 U.S.C. § 251(a) ................................................................................ 30

35 U.S.C. § 303 ................................................................................ 3, 30

35 U.S.C. § 311 *et seq.* .......................................................................... 5

35 U.S.C. § 311(a) ................................................................................. 5

35 U.S.C. § 312(a) (2000) .................................................................... 31

35 U.S.C. § 312(a)(3) ........................................................................... 14

35 U.S.C. § 314 (2000) ........................................................................ 31

35 U.S.C. § 314(a) ........................................................................ 5, 13, 36

35 U.S.C. § 314(b) ............................................................................... 32

35 U.S.C. § 314(d) ................................................................. 1, 6, 9, 12, 13

35 U.S.C. § 316 .................................................................................... 5

35 U.S.C. § 316(a) ........................................................................ 6, 25, 32

35 U.S.C. § 316(a)(4) ............................................................................. 7

35 U.S.C. § 316(a)(11) ...................................................................... 6, 32

35 U.S.C. § 316(b) ........................................................................... 7, 32

35 U.S.C. § 316(c) ............................................................................... 13

35 U.S.C. § 318 .................................................................................... 6

35 U.S.C. § 318(a) ...................................................................9, 13, 16

35 U.S.C. § 319 ...................................................................6, 9, 13, 15

35 U.S.C. § 326(a) ................................................................................. 6

**Regulatory Materials:**

37 C.F.R. § 1.104 (2001) ..................................................................... 31

37 C.F.R. § 1.181(a)(2) ........................................................................ 19

37 C.F.R. § 1.181(a)(3) ........................................................................ 19

37 C.F.R. § 1.183 ........................................................................... 19, 20

37 C.F.R. § 1.923 (2001) ..................................................................... 31

37 C.F.R. § 1.937 (2001) ..................................................................... 31

37 C.F.R. § 41.3 ................................................................................... 20

37 C.F.R. pt. 42 ..................................................................................... 7

37 C.F.R. § 42.2 ......................................................................19, 20, 34

37 C.F.R. § 42.4 ................................................................................... 33

37 C.F.R. § 42.4(a) ....................................................................2, 7, 26, 34

37 C.F.R. § 42.71(c) ........................................................................ 5, 18

37 C.F.R. § 42.71(d) ............................................................................ 18

37 C.F.R. § 42.107(a) .......................................................................... 18

37 C.F.R. § 42.108 .......................................................................... 7, 34

37 C.F.R. § 42.120(a) .......................................................................... 18

37 C.F.R. § 90.3(a)(1) ................................................................................... 1

37 C.F.R. § 90.2(a)(3)(ii) ......................................................................... 8, 19

*Clarification on the Procedure for Seeking Review of a Finding of a*
 *Substantial New Question of Patentability in Ex Parte Reexamination Proceedings,*
 75 Fed. Reg. 36,357 (June 25, 2010) ..................................................... 28

*Rules of Practice for Trials Before the Patent Trial and Appeal Board*
 *and Judicial Review of Patent Trial and Appeal Board Decisions,*
 77 Fed. Reg. 48,612 (Aug. 14, 2012) ................................................ 20, 34

PTO, Dep't of Commerce, Manual of Patent Examining Procedure
 (8th ed., Rev. 2, May 2004) ........................................................... 4, 28, 31

PTO, Dep't of Commerce, Manual of Patent Examining Procedure
 (9th ed. Mar. 2014) ................................................... 3, 4, 19, 26, 27

**Legislative Materials:**

H.R. Rep. No. 106-287 (1999) ................................................................ 28

H.R. Rep. No. 112-98 (2011) ......................................................... 5, 6, 32

S. Rep. No. 110-259 (2008) ................................................................... 32

157 Cong. Rec. E1184 (daily ed. June 23, 2011) .................................. 33

157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) ............................... 6, 32

**Other Authorities:**

Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II,*
 21 Fed. Cir. B.J. 539 (2012) .......................................................... 5, 6

## STATEMENT OF RELATED CASES

The Director is not aware of any appeal in connection with this case that has previously been before this Court, or that is currently pending in any other court.

# STATEMENT OF JURISDICTION

This appeal arises from a final written decision of the Patent Trial and Appeal Board in an inter partes review proceeding. The Board entered its final written decision on June 9, 2014. JA1. Ethicon Endo-Surgery, Inc. (Ethicon) filed a notice of appeal on August 5, 2014, Dkt. 1-2,[1] within the time limits specified by 37 C.F.R. § 90.3(a)(1).[2] This Court lacks jurisdiction to review the decision of the U.S. Patent and Trademark Office (PTO) to institute the inter partes review, which is "final and nonappealable." 35 U.S.C. § 314(d). *See infra*. This Court otherwise has appellate jurisdiction over Ethicon's appeal of the Board's final written decision under 28 U.S.C. § 1295(a)(4)(A).

# STATEMENT OF THE ISSUES

For the first time in its appellate brief, Ethicon contends that the PTO erred in instituting the inter partes review because, in Ethicon's view, the Director cannot permissibly delegate to the Board her authority to make institution decisions. The Director intervened in this appeal to address the following questions:

1.      Whether this Court lacks jurisdiction to entertain Ethicon's belated statutory challenge to the institution determination.

---

[1] "Dkt." refers to the docket entry in this Court.

[2] Citations of the U.S. Code, the Code of Federal Regulations, and the Manual of Patent Examining Procedure refer to the current versions, unless otherwise indicated.

2.     Whether, in any event, Ethicon waived its challenge to the Director's authority by failing to raise its argument at any point during the administrative proceedings.

3.     If the Court reaches the question, whether the statute precludes the Director from delegating her authority to institute inter partes reviews to the Board for determination by the same three-judge panel that conducts the review on the merits.

## STATEMENT OF THE CASE

### A.    INTRODUCTION

Ethicon owns U.S. Patent No. 8,317,070 (the '070 patent), which claims a surgical stapler.  Covidien LP filed a petition with the PTO to institute an inter partes review of the '070 patent.   Exercising authority delegated by the Director, *see* 37 C.F.R. § 42.4(a), the Patent Trial and Appeal Board (PTAB or Board) granted Ethicon's petition and instituted the inter partes review.  Following a trial, the Board issued a final written decision finding all of the challenged claims of the '070 patent unpatentable as obvious.  Ethicon appealed the Board's final decision and now argues to this Court—for the first time at any point in these proceedings—that the "statute requires that the institution decision and final decision in an *inter partes* review be made by different decision-makers."   Br. 26 (capitalization altered).   The Director intervened pursuant to 35 U.S.C. § 143 to defend the agency's inter partes review procedure.

2

**B.    STATUTORY AND REGULATORY BACKGROUND**

**1.    Structure Of The PTO**

Congress established the United States Patent and Trademark Office within the Department of Commerce.  *See* 35 U.S.C. § 1(a).  Congress vested the "powers and duties" of the Office in a single "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office" (the Director).  *Id.* § 3(a).  Accordingly, throughout the Patent Act, Congress often speaks of the agency's functions as though they were performed personally by the Director.  *See, e.g.*, 35 U.S.C. § 131 ("the Director shall issue a patent"); *id.* § 132(a) ("the Director shall notify the applicant" of the rejection of a patent application); *id.* § 251(a) ("the Director shall" reissue amended patents); *id.* § 303 ("the Director will determine whether a substantial new question of patentability" is raised by a request for reexamination).

To assist the Director in the discharge of her duties, Congress also created a Deputy Under Secretary and Deputy Director (the Deputy Director), 35 U.S.C. § 3(b)(1); separate Commissioners for Patents and Trademarks, *id.* § 3(b)(2); and two expert tribunals of administrative judges, the Patent Trial and Appeal Board (PTAB) and the Trademark Trial and Appeal Board, *id.* § 6(a); 15 U.S.C. § 1067.  The Director has routinely delegated authority to these offices, both before and after the Leahy-Smith America Invents Act (AIA), Pub. L. No. 112-29, 125 Stat. 284 (2011), was enacted.  *See* PTO, Dep't of Commerce, Manual of Patent Examining Procedure

3

(MPEP), Ch. 1000, § 1002.02 (9th ed. Mar. 2014);[3] MPEP § 1002.02 (8th ed., Rev. 2 May 2004).[4]  In addition to the offices established by statute, Congress provided for "other officers and employees" of the Office.    35 U.S.C. § 3(b)(3).    Congress authorized the Director to create positions, delegate functions to those positions, and appoint other officers and employees to fill them, as necessary to carry out the functions of the Office. *Id.*

This case concerns the authority of the Director to delegate a threshold decision to the PTAB.  Congress established the PTAB as an entity "in the Office" and provided that the Board consists of the Director, the Deputy Director, the Commissioners, and the administrative patent judges.  35 U.S.C. § 6(a).  The PTAB replaced the former Board of Patent Appeals and Interferences, which performed many of the same adjudicative functions prior to the AIA.  When Congress created the PTAB, it stipulated that "[a]ny reference in any Federal law, Executive order, rule regulation, or delegation of authority, or any document of or pertaining to the Board of Patent Appeals and Interferences is deemed to refer to the Patent Trial and Appeal Board."  35 U.S.C. § 6(a).

---

[3] *Available at* http://www.uspto.gov/web/offices/pac/mpep/.
[4] *Available at* http://www.uspto.gov/web/offices/pac/mpep/old/ mpep_E8R2.htm.

2.    **Inter Partes Review**

Congress has long provided administrative mechanisms for third parties to ask the PTO to reconsider the patentability of claims in an issued patent. In the AIA, Congress substantially expanded those procedures and streamlined the process to more efficiently resolve petitions. *See generally* H.R. Rep. No. 112-98, pt. 1 at 46-47 (2011); Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II,* 21 Fed. Cir. B.J. 539, 598 (2012). Among other important changes, Congress enacted the "inter partes review" procedure as a replacement for the former inter partes reexamination process. *See* 35 U.S.C. § 311 *et seq.*

As this Court has explained, an inter partes review proceeds in two distinct phases. *See St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375-76 (Fed. Cir. 2014). In the first phase, any interested person (other than the patent owner) may petition the Director to institute an adversarial proceeding before the PTAB to determine whether one or more claims in a granted patent should be cancelled. *See* 35 U.S.C. § 311(a). In general, if the Director finds a "reasonable likelihood that the petitioner would prevail" with respect to at least one of the challenged claims, she may institute a review. *Id.* § 314(a). A party dissatisfied with the institution decision may file a petition for rehearing before the agency. 37 C.F.R. § 42.71(c).

The second phase is the Board's conduct of the review on the merits. 35 U.S.C. § 316. Unlike reexaminations, which are first conducted by an examiner, an inter

partes review is conducted directly before the Board. By authorizing the PTAB to conduct the trial in the first instance, Congress sought to "substantially accelerate the resolution of inter partes cases." 157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011); *see* H.R. Rep. No. 112-98, pt. 1 at 45. At the conclusion of the proceedings, which generally must wrap up within a year, 35 U.S.C. § 316(a)(11), the Board issues a "final written decision with respect to the patentability" of the claims at issue in the review. *Id.* § 318.

Only the result of the second phase—the Board's final written decision with respect to patentability—is subject to appeal to this Court. 35 U.S.C. §§ 319, 141(c); *see In re Cuozzo Speed Techs., LLC*, No. 14-1301, __ F.3d __, 2015 WL 448667, at *3 (Fed. Cir. Feb. 4, 2015); *St. Jude Medical*, 749 F.3d at 1375-76. Congress specified that the agency's threshold determination to institute the inter partes review shall be "final and nonappealable," *id.* § 314(d). As this Court has stressed, by simultaneously both limiting this Court's jurisdiction to the final patentability decision and expressly forbidding appeals of the institution decision, Congress clearly expressed its intent to bar appellate review of the agency's institution decisions in this Court. *See Cuozzo*, 2015 WL 448667, at *3; *St. Jude Medical*, 749 F.3d at 1375-76.

To implement the AIA, including the inter partes review scheme, Congress also provided the PTO with expanded rulemaking authority. *See generally* 35 U.S.C. §§ 316(a), 326(a); AIA §§ 18(a)(1), 18(d)(2), Pub. L. 112-29, 125 Stat. at 329, 331. The AIA authorizes the Director to "prescribe regulations . . . establishing and governing

6

inter partes review," 35 U.S.C. § 316(a)(4), and directs the Director to consider the effect of any regulations on "the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter," among other things, *id.* § 316(b). Pursuant to these express statutory grants of rulemaking authority, the PTO has prescribed regulations governing inter partes review, and other types of post-grant review, as well as general rules of practice before the Board. *See generally* 37 C.F.R. pt. 42; *see also Cuozzo*, 2015 WL 448667, at \*5 (discussing the agency's substantial rulemaking authority under the AIA). As one exercise of that rulemaking authority, the Director expressly delegated her power to make institution decisions to the PTAB. *See* 37 C.F.R. §§ 42.4(a) ("The Board institutes the trial on behalf of the Director."), 42.108 ("Institution of inter partes review."); *St. Jude Medical*, 749 F.3d at 1375 n.1 (describing the Director's delegation to the Board).

### C.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ethicon owns the '070 patent, which is directed to a surgical stapler that is capable of producing staples of different lengths. JA25. Covidien filed a petition to institute inter partes review, contending that claims 1-14 of the '070 patent are unpatentable under 35 U.S.C. §§ 102 and 103 based on various combinations of prior art. JA27. Ethicon filed its preliminary response. JA25. Although Ethicon disputed Covidien's patentability arguments and urged that the petition should be denied, it did not contend that the Director's delegation to the Board was in any respect invalid, nor did it suggest that the Board lacked the authority to rule on the petition. *See* JA757-

86.  Indeed, Ethicon recognized that *the Board* had authority to institute inter partes review when the petition shows a reasonable likelihood that the petitioner would prevail.  JA777 ("The Board's authority to institute *inter partes* review is limited only to . . . .").  After considering the petition and the response, the PTAB granted the petition for inter partes review, limited to a few of Covidien's proposed obviousness grounds.  JA24-46.  The Board denied the other proposed grounds for review.  JA46.

In its response on the merits, Ethicon again failed to challenge the Director's delegation of the institution decision or the assignment of the trial to a particular panel of the Board.  *See* JA823-89.  After conducting a hearing, the PTAB issued a final written decision finding the claims in the '070 patent unpatentable as obvious.  JA1-22.  Ethicon filed a notice of appeal with the PTAB in accordance with 37 C.F.R. § 90.2(a)(3)(ii), which requires the notice of appeal to "provide sufficient information to allow the Director to determine whether to exercise the right to intervene in the appeal."  37 C.F.R. § 90.2(a)(3)(ii).  Ethicon's notice of appeal stated that it anticipated raising four issues on appeal, all of which related to the PTAB's claim construction and obviousness determinations.  *See* Dkt. 1-2.

Not once during the entire proceedings before the PTO—either in a filing or at the hearing—did Ethicon challenge the Board's authority to institute review or the assignment of the same panel of judges for both the institution stage and the trial stage.

## SUMMARY OF ARGUMENT

Ethicon asks this Court to reverse the Board's final decision that the '070 patent claims are obvious because, in Ethicon's view, the Board's institution decision was improper. Specifically, Ethicon contends that the Director improperly delegated the institution decision to the Board.

This Court does not have jurisdiction to consider Ethicon's argument. The institution decision is "final and nonappealable," 35 U.S.C. § 314(d), and only the Board's "final written decision with respect to the patentability," *id.* § 318(a), is before the Court, *see id.* § 319. This Court's holding in *In re Cuozzo Speed Technologies, LLC*, that the Court "lacks jurisdiction to review the PTO's decision to institute IPR [inter partes review]" in an appeal from the Board's final patentability decision, No. 14-1301, __ F.3d __, 2015 WL 448667, *1 (Fed. Cir. Feb. 4, 2015), precludes Ethicon from attacking the institution decision here.

Even if this Court had jurisdiction, moreover, Ethicon has waived its challenge by failing to raise it before the agency. As this Court recognized in *In re DBC*, "[i]t is well-established that a party generally may not challenge an agency decision on a basis that was not presented to the agency." 545 F.3d 1373, 1378 (2008). Ethicon had numerous opportunities to raise its challenge to the Board and to the Director, but it failed to do so. Under bedrock principles of administrative law, Ethicon is not entitled to seek reversal of the agency's decision on grounds that it never gave the agency an opportunity to address.

In any event, there is no merit to Ethicon's contention that the Director lacks the discretion to delegate the institution decision to the Board. It is well established that "[w]hen a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent." *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004). The Director is the head of the PTO, and she delegated her authority to the PTAB, a subordinate component within the PTO.

Ethicon cannot show affirmative evidence of congressional intent to preclude the Director from delegating her authority in this manner. First, Ethicon argues that section 3(b)(3) prohibits the Director from delegating authority to personnel that she did not appoint. To the contrary, section 3(b)(3) merely confirms the Director's power to create offices, delegate functions to *those* offices, and appoint personnel to fill them. It is not a broad prohibition on the Director's inherent authority to subdelegate her powers. Indeed, Ethicon's reading of section 3(b)(3) would have the absurd result of prohibiting the Director from delegating authority to the Deputy Director or the Commissioners of Patents and Trademarks.

Second, Ethicon contends that Congress intentionally used the terms "Director" and "the Board" to require different decisionmakers to make the institution and final decisions in inter partes review proceedings. That is incorrect. As courts have recognized, Congress routinely assigns functions to the head of an agency without intending to limit the head of the agency's ability to delegate those

functions. And Congress's requirement that "the Board" conduct the reviews on the merits reflects a different statutory purpose than Ethicon proposes: Congress sought to streamline the inter partes review process by specifying that the reviews would be conducted in the first instance by the Board itself, rather than by an examiner with a subsequent appeal to the Board (as occurred under the prior inter partes reexamination scheme). The legislative history confirms this statutory purpose.

Finally, the Director's delegation of the institution decision to the Board presents no due process concerns. The Supreme Court explained in *Withrow v. Larkin*, that it is "very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings," and "[t]his mode of procedure . . . does not violate due process of law." 421 U.S. 35, 56 (1975). Indeed, similar procedures widely exist without raising due process concerns, including a judge's ability to issue a warrant and then preside over a trial, a judge's ability to rule at pre-trial hearings and then preside over a trial, and a judge's ability to rule on a temporary restraining order or preliminary injunction and then preside over a trial. *See id.* at 56-57. For the same reasons, it is permissible for the Board to determine whether the petitioner has a "reasonable likelihood of success" and then to preside over the inter partes review proceeding.

## STANDARD OF REVIEW

This Court reviews its own jurisdiction de novo. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1360 (Fed. Cir. 2008). Regulations issued by the PTO under a statutory grant of rulemaking authority are entitled to deference unless based on an unreasonable construction of the statute. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *In re Cuozzo Speed Techs., LLC*, No. 14-1301, __ F.3d __, 2015 WL 448667, at *7-8 (Fed. Cir. Feb. 4, 2015).

## ARGUMENT

The Director has intervened in this appeal to address Ethicon's argument, raised for the first time in this Court, that the Director lacks the authority to delegate institution decisions to the Board—the expert tribunal within the Office whose very purpose is the resolution of contested patentability issues. As we explain below, Ethicon cannot pursue that contention here, both because Congress has expressly barred appeals of the PTO's institution decisions, *see* 35 U.S.C. § 314(d), and because Ethicon failed to raise its statutory arguments at any point during the administrative proceedings. But if the Court reaches the question, it should reject Ethicon's arguments, which reflect a fundamental misunderstanding of the principles governing the delegation of administrative authority.

## I.    THIS COURT LACKS JURISDICTION TO REVIEW THE DIRECTOR'S DECISION TO INSTITUTE AN INTER PARTES REVIEW OF THE '070 PATENT

Ethicon's lead argument on appeal is that the Board did not have authority to institute the inter partes review because the AIA requires the Director to make the institution decision. *See* Br. 26-43. Based on this alleged error in instituting the inter partes review, Ethicon contends that the Board's final decision holding the challenged claims unpatentable must be reversed because the proceeding was unauthorized from the outset. Br. 43. As this Court recently held, however, Congress has expressly barred parties from appealing the Board's patentability determinations on the theory that the institution decision was unauthorized. *In re Cuozzo Speed Techs., LLC*, No. 14-1301, __ F.3d __, 2015 WL 448667 (Fed. Cir. Feb. 4, 2015).

As the Court explained in *Cuozzo*, Congress carefully circumscribed the issues that may be appealed to this Court in an inter partes review proceeding. During the first phase of the proceeding, the Director—or her delegee—determines whether to "institute" the proceeding. 35 U.S.C. § 314(a). That determination "shall be final and nonappealable." *Id.* § 314(d). During the second phase of the proceeding, the Board conducts the review on the merits, *id.* § 316(c), and issues a "final written decision with respect to the patentability" of the relevant claims, *id.* § 318(a). That determination, and *only* that determination, is appealable: a party "dissatisfied with the final written decision of the [Board] under section 318(a) may appeal the decision" to this Court. 35 U.S.C. § 319; *see also id.* § 141(c) (A party "who is dissatisfied with the

13

final written decision of the Patent Trial and Appeal Board under section 318 (a) . . . may appeal the Board's decision" to this Court).

Thus, this Court concluded in *Cuozzo* that it "lack[ed] jurisdiction to review the PTO's decision to institute [inter partes review]" in an appeal from the Board's final written decision in an inter partes review. 2015 WL 448667, at *1. The patent owner argued that the PTO did not have authority to institute inter partes review on certain claims because the petitioner had not identified in its petition the grounds upon which the PTO relied, as required by 35 U.S.C. § 312(a)(3). *Id.* at *2. This Court held that it lacked jurisdiction to address that argument because the "final and nonappealable" directive in § 314(d) "prohibits review of the decision to institute [inter partes review] even after a final decision." *Id.* at *3. The Court also relied on *In re Hiniker Co.*, 150 F.3d 1362 (Fed. Cir. 1998), which held that "even absent a provision comparable to § 314(d)," "a flawed decision to institute reexamination" under the previous statutory scheme "was not a basis for setting aside a final decision." *Cuozzo*, 2015 WL 448667, at *3.

In *Hiniker*, the patent owner claimed that the PTO did not have authority to institute the reexamination proceeding because it relied on prior art that was considered in the original examination and thus did not present a "substantial *new* question of patentability" as required by the statute. *Hiniker*, 150 F.3d at 1366-67 (emphasis added). This Court rejected that argument, however, emphasizing that its jurisdiction was only over the "appeal from the decision of the Board." *Id.* at 1367.

14

By contrast, the Court explained, "the provision that [the patent owner] argues was violated here, is directed toward the Commissioner's authority to institute a reexamination, and there is no provision granting us direct review of that decision." *Id.* The Court concluded that "[a]ny error in that decision was washed clean during the reexamination proceeding," and it "must review the decision of the Board on the Board's own rationale." *Id.*; *see also Cuozzo*, 2015 WL 448667, at *3 (summarizing *Hiniker*).

This Court's reasoning in *Cuozzo* and *Hiniker* precludes Ethicon from challenging in this appeal the Board's authority to institute inter partes review in this case. Like the challengers in those cases, Ethicon contends that the Board did not have authority to institute inter partes review in the first place. But this Court's jurisdiction is expressly limited to the Board's final written decision as to patentability. *See* 35 U.S.C. §§ 319, 141(c). Thus, Ethicon is entitled to challenge in this Court only the Board's patentability determinations on the merits. As the Court explained in *Cuozzo*, judicial review of the PTO's decision to *institute* an inter partes review is available, if at all, solely by an extraordinary writ of mandamus—a question that the Court did not decide. 2015 WL 448667, at *4.

The specific characteristics of Ethicon's challenge do not alter the analysis. It makes no difference that Ethicon challenges the authority of the Board to make institution decisions in general, rather than the propriety of its decision on particular facts. As this Court explained in *Hiniker* and reiterated in *Cuozzo*, the only thing

properly before the Court is the agency's final decision as to patentability, 35 U.S.C. § 318(a). *See Hiniker*, 150 F.3d at 1367; *Cuozzo*, 2015 WL 448667, at *3; *see also St. Jude Medical, Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1374, 1376 (Fed. Cir. 2014) (same). The nature of the error that Ethicon asserts in the institution decision is therefore irrelevant because the institution decision is not before the Court. And in any event, Ethicon seeks precisely the relief that *Cuozzo* held is not available in appeals of this kind: reversal of the Board's patentability determination, without regard to the merits, on the theory that the proceeding should never have been commenced. *See* Br. 43 (urging that the Board's decision be vacated because the institution decision was unauthorized). Moreover, Ethicon does tie its challenge to the particular facts of the institution decision in this case. *See* Br. 22, 34, 36-37,

It also makes no difference that Ethicon—no doubt aware of the jurisdictional bar—seeks to frame its challenge as an attack on the Board's final decision, rather than on the institution decision directly. *See, e.g.*, Br. 27 (The statute "prohibits the PTAB from rendering final decisions where the Director did not institute review." (capitalization altered)). According to Ethicon, section 318(a) authorizes the PTAB to issue a final decision "[o]nly '[i]f an inter partes review is instituted . . . under [chapter 31]." Br. 27 (first alteration added). But *every* challenge to an institution decision could be reframed this way. For example, the patent owner's argument in *Cuozzo* could have been framed as a challenge to the Board's final decision on the theory that the PTO did not properly institute inter partes review under chapter 31.

16

Congress carefully limited this Court's appellate jurisdiction in inter partes review cases to the Board's final patentability decision on the merits. Because Ethicon's belated delegation arguments challenge the agency's institution decision, rather than the merits of the Board's obviousness determination, this Court lacks jurisdiction to decide them.

## II.  ETHICON WAIVED ITS CHALLENGE TO THE INTER PARTES REVIEW PROCESS

Even aside from the express jurisdictional bar against appeals of institution decisions, Ethicon is not entitled to attack the agency's decision in this Court on a statutory theory that it never raised before the PTO. Over more than a year of administrative litigation, Ethicon responded to the petition for inter partes review; submitted numerous arguments before the Board; participated in an extensive substantive hearing before the same panel of the Board; and, following the agency's final decision, filed a notice to the agency of the issues it would raise on appeal in this Court. At no point, however, did Ethicon suggest that the Board lacked the authority to make the institution decision on the Director's behalf. Nor did Ethicon contend that it was in any way inappropriate for the same panel of Board judges that made the institution decision to conduct the review on the merits. Under bedrock principles of administrate law, therefore, Ethicon is not entitled to attack the agency's decision on those grounds now.

"It is well-established that a party generally may not challenge an agency decision on a basis that was not presented to the agency." *In re DBC*, 545 F.3d 1373, 1378 (2008) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). As the Supreme Court explained in *United States v. L.A. Tucker Truck Lines*, "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." 344 U.S. 33, 37 (1952). *Accord, e.g.*, *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004) (citing the "hard and fast rule of administrative law" that "issues not raised before an agency are waived and will not be considered by a court on review").

Ethicon had numerous opportunities to present its argument to the agency, but repeatedly failed to do so. Ethicon could have raised its challenge before the Board in its preliminary response to Covidien's petition for inter partes review, 37 C.F.R. § 42.107(a), in its request for rehearing of the institution decision, *id.* § 42.71(c), in its response to the petition on the merits, *id.* § 42.120(a), or in a request for rehearing of the final written decision, *id.* § 42.71(d). Ethicon filed a preliminary response and response on the merits, seeking relief from the PTO on various substantive and procedural grounds. But Ethicon kept silent about the alleged statutory errors that now form its lead argument in this Court.

Ethicon also could have raised its challenge directly to the Director. Once Covidien filed its petition for inter partes review, Ethicon could have petitioned the Director, arguing that this is a "case[] in which a statute or the rules specify that the matter is to be determined directly by or reviewed by the Director." 37 C.F.R. § 1.181(a)(2). And the Director could have assigned Covidien's petition for inter partes review to herself to make the institution decision. *See* 37 C.F.R. § 42.2 (defining the Board to include a member of the Board acting with authority of the Board for petition decisions). Ethicon also could have petitioned the Director for a suspension of the rule that delegates the institution decision to the Board. *Id.* § 1.183 (petitions for "suspension of rules"). But Ethicon made no attempt to raise the issue with the Director.

Furthermore, Ethicon frames the issue before this Court as whether it was error for "the same three-member PTAB panel" to institute and conduct the inter partes review "given that the America Invents Act provides for a different decision-maker for each determination." Br. 1; *see also id.* at 26. To cure that complaint, Ethicon could have asked the agency to assign the inter partes review proceeding to a different panel than the panel that made the institution decision. 37 C.F.R. §§ 1.181(a)(3) (petition to Director), 41.3 (petition to Chief Administrative Patent Judge); MPEP § 1002.02(f). But Ethicon made no such request.

Finally, after the Board entered its final decision on the merits, Ethicon filed the notice of appeal required by PTO regulations. 37 C.F.R. § 90.2(a)(3)(ii). That

regulation specifies that the notice of appeal "must provide sufficient information to allow the Director to determine whether to exercise the right to intervene in the appeal." *Id.*; *cf.* 35 U.S.C. § 143 (Director's right to intervene).[5] Even there, however, Ethicon did not disclose its intent to argue that the entire inter partes review scheme, as implemented by the PTO, is predicated on an invalid delegation of authority to the Board. The only issues Ethicon identified in its notice of appeal related to the Board's patentability decision on the merits. *See* Dkt. 1-2. Indeed, it was not until Ethicon filed its opening brief in this Court that the government learned of Ethicon's statutory challenge to the Director's delegation.[6]

That is too late. *See In re DBC*, 545 F.3d at 1378. In a footnote in its appellate brief, Ethicon attempts to excuse its repeated failures, urging that it would have been futile to raise the issue before the PTAB. *See* Br. 26 n.4. But Ethicon has not made that showing, nor could it. As discussed, the Director had the power to suspend the rules, 37 C.F.R. § 1.183, or assign the institution decisions solely to herself, 37 C.F.R. § 42.2, or assign the final decision to a different panel of the Board than made the

---

[5] *See also Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions*, 77 Fed. Reg. 48,612, 48,626 (Aug. 14, 2012) ("Section 90.2 requires parties filing a notice of appeal in such proceedings to provide sufficient information (such as a statement of the issues to be raised in the appeal) to allow the Director to determine whether to exercise the right to intervene in the appeal pursuant to 35 U.S.C. 143.").

[6] Even in its original docketing statement in this Court, Ethicon mentioned only the obviousness issue. Dkt. 7. In a corrected docketing statement, Ethicon stated the issue of "[w]hether the Board's decision to institute inter partes review deprived Ethicon of due process." Dkt. 11, at 2.

institution decision, 35 U.S.C. § 6(c). And in any event, the Board routinely considers constitutional and statutory challenges to its proceedings, *see, e.g.*, *MCM Portfolio, LLC v. Hewlett-Packard Co.*, Fed. Cir. No. 15-1091 (Article III and Seventh Amendment challenge to inter partes review scheme); *Versata Development Group, Inc. v. SAP America, Inc.*, Fed. Cir. No. 14-1194 (facial challenge to PTO regulations governing covered business method reviews and the standard for claim construction in such proceedings), and Ethicon was not entitled to withhold its challenge from the Board's review. Indeed, in *In re DBC*, this Court held that the appellant had waived a constitutional Appointments Clause challenge by failing to raise it before the PTO. 545 F.3d at 1377. At the very least, if Ethicon had raised the issue before the Board, this Court would have the benefit of the agency's reasoning to review on appeal.

This case exemplifies the justifications for the rule that federal courts will not grant relief on theories not pressed before an agency. Allowing parties to raise challenges to the structure of agency proceedings for the first time on appeal, after the merits have been determined against them, can only encourage "sandbagging, i.e., 'suggesting or permitting, for strategic reasons, that the [agency] pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error.'" *In re DBC*, 545 F.3d at 1380 (quoting *Freytag v. Comm'r*, 501 U.S. 868, 895 (1991) (Scalia, J., concurring in part and concurring in the judgment)). That result should not be permitted here.

## III. THE DIRECTOR PROPERLY DELEGATED INSTITUTION DECISIONS TO THE BOARD

If the Court reaches the merits of Ethicon's belated argument, it should reject the argument. Ethicon's suggestion that the Director cannot delegate institution decisions to the PTAB—the specialized tribunal of administrative patent judges that Congress established for the very purpose of resolving contested questions of patentability—reflects a basic misunderstanding of the principles governing delegation of executive authority. Congress understood and expected that the Director would not exercise the institution authority personally, and nothing in the AIA prohibits the Director from delegating that authority to the Board. Indeed, the AIA contemplated that the Board *would* receive delegated authority from the Director. And controlling Supreme Court precedent makes clear that the due process concerns posited by Ethicon are entirely without merit.

### A. The Director's Delegation Is Consistent With The Established Background Principle That Executive Authority Is Delegable To Subordinates

The principle that executive authority is generally delegable to subordinates is one of the basic organizing principles of administrative law. Congress routinely vests all of the powers and duties of an agency in the office of a single agency head, expecting and intending that those powers will be redelegated in the manner that best effectuates the agency's mission. As the Tenth Circuit recently observed, the courts of appeals are "unanimous in permitting subdelegations to subordinates . . . so long as

22

the enabling statute and its legislative history do not indicate a prohibition on subdelegation." *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1190 (10th Cir. 2014); *see also U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004) ("When a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent.").

The presumptive delegability of executive authority is firmly established in Supreme Court precedents, which recognize the practical indispensability of such delegations. In *Parish v. United States*, 100 U.S. 500 (1879), for example, the Court held that an act of the Assistant Surgeon-General did not need to be ratified by the Surgeon-General to have legal force. The Court explained that "it is impossible for a single individual to perform in person all the duties imposed on him by his office," and it would be "subversive of the purposes" for which subordinate offices "were created, if their acts are to be held of no force until ratified by the principal secretary or head of department." *Id.* at 504. Similarly, in *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111 (1947), the Court held that the Administrator of the Emergency Price Control Act had authority to delegate the power to issue subpoenas to regional administrators and district directors. Although the Act did not specifically authorize the delegation, the Court noted that the Act gave the Administrator "broad rule-making power," which "may itself be an adequate source of authority to delegate a particular function, unless by express provision of the Act or by implication it has

23

been withheld." *Id.* at 121.  And the Court emphasized that "[t]here is no provision in the present Act negativing the existence of such authority . . . .  Nor can the absence of such authority be fairly inferred from the history and content of the Act."  *Id.* at 121-22.

By contrast, the Court has found that subdelegation is not permitted only when there is a clear congressional intent to prohibit it.  In *United States v. Giordano*, 416 U.S. 505 (1974), the Court held that the Attorney General could not delegate the power to authorize wiretap applications to the Attorney General's executive assistant. Although the Court did not disagree that—as a general matter—such authority is presumptively delegable in the agency head's discretion, *id.* at 513-14, it found the delegation at issue was precluded under a specific statute that allowed only the Attorney General or "any Assistant Attorney General specially designated by the Attorney General" to authorize such applications, *id.* at 508.  After discussing the purpose and legislative history of that provision, which the Court concluded was intended to circumscribe the Attorney General's delegation authority, the Court concluded that it would have been "wholly at odds with the scheme and history of the Act" to find that the Attorney General could freely delegate to any officer in the Department.  *Id.* at 523.  Together, *Fleming* and *Giordano* establish the principle, widely

accepted in the courts of appeals, that delegation of executive authority is allowed absent a clear and affirmative expression of congressional intent to prohibit it.[7]

That principle governs here. The Director is the head of the PTO and the person in whom Congress has vested—without limitation— "[t]he powers and duties of the United States Patent and Trademark Office." 35 U.S.C. § 3(a)(1). As in *Fleming*, these powers include broad rulemaking authority over the proceedings in the Office, *see* 35 U.S.C. § 2(b)(2), and, specifically, inter partes review, *see* 35 U.S.C. § 316(a). The PTAB is a subordinate entity within the PTO to which the Director may properly delegate her authority: Congress provided that the Board is "in the Office," of which the Director is the head. 35 U.S.C. § 6(a). Indeed, the Director sets the pay and consults on the appointment of the administrative patent judges, prescribes the Board's rules, and designates the Board's panels. *Id.* at § 3(b)(6), § 6(a), (c), § 316(a); *see also In re Alappat*, 33 F.3d 1526, 1532 & n.3, 1535 (Fed. Cir. 1994). Because the Director is the head of the PTO, and the Board is a subordinate

---

[7] This Court's decision in *Splane v. West*, 216 F.3d 1058 (Fed. Cir. 2000), is not to the contrary. This Court held that the Secretary of Veterans Affairs had express authority to delegate his powers within the agency, which included the authority to delegate the power to request opinions from the general counsel to the Board of Veteran's Appeals. *Id.* at 1066. In so holding, the Court remarked that "[t]he Supreme Court has said that whether an agency head has the implicit ability to delegate his powers to subordinates depends on whether Congress has expressly granted the power to delegate." *Id.* (citing *Cudahy Packing Co. v. Holland*, 315 U.S. 357 (1942)). While it is unclear what was meant by that dictum, the Court did not purport to quarrel with the controlling principles established by the Supreme Court in *Fleming*, which distinguished *Cudahy*, and *Giordano*.

component of the PTO, the Director may delegate her authority to the Board "absent affirmative evidence of a contrary congressional intent." *U.S. Telecom Ass'n*, 359 F.3d at 565.

### B. Ethicon Cannot Show That Congress Intended To Prohibit Delegations To The Board

Ethicon cannot show that Congress intended to prohibit the Director from delegating the decision to institute inter partes review to the Board. Congress expected and intended that the Director would delegate aspects of her authority to the Board, just as she delegates aspects of her authority to the Deputy Director and the Commissioners—*all* of which would be impermissible under Ethicon's interpretation. Because the Patent Act does not preclude the Director from delegating matters to the Board, the agency's rule delegating the institution determination, 37 C.F.R. § 42.4(a), is entitled to *Chevron* deference.

First, Ethicon argues that the Director is completely prohibited from delegating to the Board because section 3(b)(3) authorizes the Director to delegate only to officers that the Director appointed. *See* Br. 29. This argument would invalidate not only the Director's delegation of the institution decision to the Board, but all of the Director's delegations to the Board and its administrative judges, *see* MPEP § 1002.02(f)-(g). This argument fundamentally misunderstands section 3(b)(3). Section 3(b)(3) states that the Director "shall" "(A) appoint such officers, employees (including attorneys), and agents of the Office as the Director considers necessary to

carry out the functions of the Office," and shall "(B) define the title, authority, and duties of such officers and employees and delegate to them such of the powers vested in the Office as the Director may determine." 35 U.S.C. § 3(b)(3). It is an affirmative recognition of authority, not a limit on the Director's authority. As the Second Circuit recognized in *United States v. Mango*, "Congress may mention a specific official only to make it clear that this official has a particular power rather than to exclude delegation to other officials." 199 F.3d 85, 90 (2d Cir. 1999) (citing *Shook v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 132 F.3d 775, 782 (D.C. Cir. 1998)).

Moreover, section 3(b)(3)(B) addresses delegation only to the offices that the Director creates. It says nothing about the Director's ability to delegate to the offices created elsewhere by the statute. Indeed, it is titled "*other* officers and employees." 35 U.S.C. § 3(b)(3) (emphasis added; capitalization altered). Ethicon's reading of the statute as a broad prohibition on the Director's ability to delegate authority would lead to absurd results. If section 3(b)(3) prohibits the Director from delegating to officers that she did not appoint, then she cannot delegate any aspect of her authority to the Deputy Director or the Commissioners for Patents and Trademarks, because they (like the PTAB judges) are appointed by the Secretary, *see* 35 U.S.C. § 3(b)(1)-(2); MPEP §§ 1002.02(o) (delegations to Deputy Director), 1002.02(i) (delegations to Commissioner for Trademarks). That outcome would be particularly absurd with respect to the Deputy Director, in whom Congress vested no specific responsibilities

other than the "authority to act in the capacity of the Director in the event of the absence or incapacity of the Director." *Id.* § 3(b)(1).

The relevant legislative history reinforces the conclusion that section 3(b)(3) is not a limit on the Director's inherent authority to delegate within the agency. Congress added section 3(b)(3) in the American Inventors Protection Act of 1999 when it renamed the Commissioner the "Director" and made other changes to the Office's organization. In describing section 3(b)(3), the Committee Report states: "The Director may also appoint other officers, agents, and employees as she sees fit, and define their responsibilities with equal discretion. The PTO is specifically not subject to any administratively or statutorily imposed limits (full-time equivalents, or 'FTEs') on positions or personnel." H.R. Rep. No. 106-287, at 64 (1999). The Committee Report thus emphasizes the broad discretion the statute gives the Director to create positions and fill them. Nothing suggests it is a limit on the Director's authority.

Indeed, in enacting the AIA, Congress implicitly ratified the Director's authority to delegate to the Board. Prior to the AIA, the Director had delegated various functions to the Chief Administrative Judge of the Board of Patent Appeals and Interferences and the administrative patent judges that served on the Board. *See* MPEP § 1002.2(f)-(g) (8th ed., Rev. 2 May 2004); *Clarification on the Procedure for Seeking Review of a Finding of a Substantial New Question of Patentability in Ex Parte Reexamination Proceedings*, 75 Fed. Reg. 36,357 (June 25, 2010). In enacting the AIA, Congress

28

wished to be clear that, by renaming the Board and granting it new authority, Congress did not intend to disturb these existing delegations. Accordingly, Congress provided that "any reference in any . . . delegation of authority . . . pertaining to the Board of Patent Appeals and Interferences is deemed to refer to the Patent Trial and Appeal Board." 35 U.S.C. § 6(a).

Contrary to Ethicon's argument, therefore, Congress expressly contemplated that the PTAB *would* exercise delegated authority from the Director. If Congress had for some reason intended to prevent the Director from delegating the institution decision in the same manner, "it would have explicitly done so." *Inland Empire Public Lands Council v. Glickman*, 88 F.3d 697, 703 (9th Cir. 1996) (upholding the delegation to a subordinate officer of the Secretary of Agriculture's "sole discretion" to authorize timber sales because, *inter alia*, the agency "followed the delegation procedures which the Secretary of Agriculture traditionally has used").

Second, Ethicon argues that "independent of other statutory limits on the Director's authority to delegate to administrative patent judges," Br. 31, the statute's express assignment of the institution decision to the Director and the final determination to the PTAB prohibits the Director from delegating the institution decision to the PTAB, *see* Br. 26-31. Ethicon further contends that the statutory structure and purpose demonstrate that Congress intended this division of authority. Br. 31-34. Neither argument withstands scrutiny. As explained below, the use of the term "Director" merely signifies that Congress was assigning the power to the agency.

29

And, as the legislative history indicates, the use of the term "Board" was a purposeful choice intended to streamline the inter partes review process.

The statute's assignment of the institution decision to the Director is unremarkable. Congress has routinely assigned functions to the Director, without intending to require that the Director personally carry out the functions. *See, e.g.*, 35 U.S.C. § 131 ("the Director shall issue a patent"); *id.* § 132(a) ("the Director shall notify the applicant" of the rejection of a patent application); *id.* § 251(a) ("the Director shall" reissue amended patents); *id.* § 303 ("the Director will determine whether a substantial new question of patentability" is raised by a request for reexamination).

As a practical matter, moreover, Congress could not have expected the Director to personally make all of the institution decisions.[8] Courts have consistently recognized that Congress does not expect the head of an agency to make all of the relevant decisions personally. *See, e.g.*, *Fleming*, 331 U.S. at 122-23 ("Certainly, so far as the investigative functions were concerned, he could hardly be expected, in view of the magnitude of the task, to exercise his personal discretion in determining whether a particular investigation should be launched."); *Inland Empire*, 88 F.3d at 702 (9th Cir. 1996) ("Requiring Secretary Glickman to personally authorize every salvage timber

---

[8] As of February 12, 2015, the agency had received 2,466 petitions for inter partes review. *See* http://www.uspto.gov/sites/default/files/documents/021215_aia _stat_graph.pdf .

sale would contradict the purpose of the Rescissions Act, which is to expedite such sales."); *Mango*, 199 F.3d at 91 ("[T]he magnitude of the task of issuing permits suggests that Congress intended to allow subordinate Corps officials to issue permits and specify permit conditions."). Congress's assignment of the institution decision to the Director is consistent with its default assignment of Office functions to "the Director," and does not express a clear congressional intent to limit the Director's ability to delegate that function.

By contrast, Congress's direction that the Board conduct the inter partes review trial and make the final determination expresses an intent to assign those functions to the Board in the first instance. The legislative history indicates that the choice of the Board to make the final determination was a purposeful choice intended to eliminate one stage of appellate review. Before the AIA, the statute provided that the Director would both make the threshold determination whether inter partes reexamination was warranted and cause the reexamination to occur. *See* 35 U.S.C. §§ 312(a), 314, 131-33 (2000). The Director delegated both of those determinations to individual examiners. *See* 37 C.F.R. §§ 1.923; 1.937, 1.104 (2001). And the same examiner would make the threshold and final determinations. *See* MPEP § 2255 (8th ed., Rev. 2 May 2004).

In explaining why the new post-grant review procedures were needed, Congress did not express any concern with having both determinations made by the same person. Instead, the House Committee explained that reexamination proceedings under the prior law were too costly and time consuming because they

"[we]re first conducted by examiners and, if the patent [wa]s rejected, then by the Patent Board judges.    Thus, many patents must go through two rounds of administrative review (one by the examiner, and a second by the Patent Board) adding to the length of the proceeding."    *See* H.R. Rep. No. 112-98, pt. 1 at 45 (2011). Senator Kyl observed that "[t]he bill also eliminates intermediate administrative appeals of inter partes proceedings to the BPAI, instead allowing parties to only appeal directly to the Federal Circuit.    By reducing two levels of appeal to just one, this change will substantially accelerate the resolution of inter partes cases."    157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011).    Similarly, the Senate Committee commented on an earlier proposal for reforming post-grant proceedings, stating: "The PGR proceedings are conducted in the first instance by three Patent Board judges, and not first by an examiner, thus reducing the pendency compared to reexamination proceedings."  S. Rep. No. 110-259, at 23 (2008).

Congress's purpose of making inter partes review proceedings more efficient is underscored by other provisions of the statute.  Congress enacted strict time limits on the decisionmaking process.  It required that the institution decision be made within three months of receiving a preliminary response to a petition (or when such response would have been due), *see* 35 U.S.C. § 314(b), and a final decision be made within one year of the institution decision, *see id.* § 316(a)(11).  When Congress gave the Director rulemaking authority over the conduct of inter partes review, *id.* § 316(a), it instructed the Director to "consider the effect of any such regulation on . . . the efficient

32

administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter," *id.* § 316(b). The Director's delegation of the institution decision to the Board is consistent with the statutory purpose of increasing efficiency because it avoids the need for two separate entities to become familiar with the patent and prior art.

Ethicon notes that the "reasonable likelihood of success" standard was an important protection for patent owners added by the AIA. Br. 33. That is entirely consistent with having the Board make the institution decision. As Representative Lamar Smith stated, "it bears repeating that defendants cannot even start this program unless they can persuade a panel of [administrative patent] judges at the outset of the proceeding that it is more likely than not that the patent is invalid." 157 Cong. Rec. E1184 (daily ed. June 23, 2011) (describing similar post-grant review procedure).

Ethicon also argues that "[t]his Court has recognized that the AIA creates a divided process between two decision-makers," Br. 30, citing *St. Jude Medical*, 749 F.3d at 1375. The Court did, as Ethicon states, describe the two-step process for inter partes reviews. But the Court explicitly noted that "[t]he Director, by regulation, has delegated to the Board the authority under section 314 to decide whether to institute an inter partes review. 37 C.F.R. §§ 42.4 & 42.108. The Board, in making the review-instituting decision, is exercising the Director's section 314 authority." *St. Jude Medical*, 749 F.3d at 1375 n.1; *see also In re Dominion Dealer Solutions, LLC*, 749 F.3d 1379, 1380 n.1 (Fed. Cir. 2014); *In re Procter & Gamble Co.*, 749 F.3d 1376, 1378 n.2 (Fed. Cir.

2014).  This Court did not call into question the Director's delegation of authority to the Board.

In sum, Ethicon has not shown that allowing the Director to delegate the institution decision to the Board is "wholly at odds with the scheme and history of the Act."  *Giordano*, 416 U.S. at 523.  Accordingly, the Director has inherent authority to delegate the function to the Board, and this Court should defer under *Chevron* to the agency's regulation, 37 C.F.R. § 42.4(a), effecting that delegation.[9]

## C.    The PTO's Procedures Do Not Raise Due Process Concerns

Finally, invoking principles of constitutional avoidance, Ethicon asserts that the Director cannot delegate the institution decision because it raises serious due process concerns for the same panel of the Board to make the institution and merits determinations.  *See* Br. 35-43.

The Supreme Court, however, has specifically rejected the due process argument on which Ethicon relies.  In *Withrow v. Larkin*, the Court explained:  "It is

---

[9] Contrary to Ethicon's contention (at 42 n.9), the use of a three-member panel of the Board to make the institution decision in this case is consistent with the definition of the Board in 37 C.F.R. § 42.2.  Section 42.2 defines the Board as "*including*" "a Board member or employee acting with the authority of the Board" for petition decisions and other decisions that do not, by statute, require a three-member panel of the Board.  *Id.* (emphasis added); *see also* 77 Fed. Reg. at 48,613 (The rule "clarifies that the term 'Board' *also* means 'a Board member or employee acting with the authority of the Board' for petition decisions and interlocutory decisions, and it means 'a panel of the Board' for final written decisions." (emphasis added)).  That such decisions could be made by one member of the Board does not prohibit a panel of the Board from making them.

also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure . . . does not violate due process of law." 421 U.S. 35, 56 (1975). The Court noted that similar procedures widely exist without raising due process concerns. For example, "[j]udges repeatedly issue arrest warrants on the basis that there is probable cause to believe that a crime has been committed and that the person named in the warrant has committed it," and they "preside at preliminary hearings where they must decide whether the evidence is sufficient to hold a defendant for trial." *Id.* But "[n]either of these pretrial involvements has been thought to raise any constitutional barrier against the judge's presiding over the criminal trial" or, in a bench trial, "against making the necessary determination of guilt or innocence."[10] *Id.* In addition, a judge is not disqualified from holding a trial "because he has initially assessed the facts in issuing or denying a temporary restraining order or a preliminary injunction." *Id.*

In all of these situations, the Supreme Court emphasized, "there is no logical inconsistency" between a preliminary determination under one legal standard and a final decision under a higher legal standard, after an adversarial hearing. *Id.* at 57.

---

[10] Ethicon contends that the PTAB's institution decision is different because only the petitioner may present evidence and the panel must make a decision about the "reasonable likelihood" of success of the petition. Br. 37-38. The same is true when a judge determines whether to issue a warrant.

For example, "there is no logical inconsistency between a finding of probable cause and an acquittal in a criminal proceeding," or between an "agency filing a complaint based on probable cause and a subsequent decision, when all the evidence is in, that there has been no violation of the statute." *Id.*

The same is true here. There is no logical inconsistency between, on the one hand, the Board's initial decision that the petitioner has shown a "reasonable likelihood" that a claim is unpatentable, 35 U.S.C. § 314(a), and, on the other hand, a final decision that the petitioner ultimately failed to establish that the claim was unpatentable. Indeed, a "reasonable likelihood" of success on the merits is the same standard that courts apply when deciding whether to issue a preliminary injunction. *See, e.g., Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009).

As this Court held in *NEC Corp. v. United States*, a party "can prevail on its claim of prejudgment only if it can establish that the decision maker is not capable of judging a particular controversy fairly on the basis of its own circumstances," which is "met when the challenger demonstrates, for example, that the decision maker's mind is irrevocably closed on a disputed issue." 151 F.3d 1361, 1373 (Fed. Cir. 1998) (internal quotation marks omitted). That standard plainly is not met here, and Ethicon does not even argue that it is.

## CONCLUSION

For the foregoing reasons, the decision of the Board should be affirmed.


Respectfully submitted,


*Of Counsel:*

BENJAMIN C. MIZER
  *Acting Assistant Attorney General*

NATHAN K. KELLEY
  *Solicitor*

MARK R. FREEMAN
/s/ Katherine Twomey Allen
KATHERINE TWOMEY ALLEN
  *(202) 514-5048*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7325*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

SCOTT C. WEIDENFELLER
STACY B. MARGOLIES
  *Associate Solicitors*
  *Office of the Solicitor – Mail Stop 8*
  *U.S. Patent and Trademark Office*
  *P.O. Box 1450*
  *Alexandria, Virginia  22313-1450*


MARCH 2015

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,321 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

/s/Katherine Twomey Allen
KATHERINE TWOMEY ALLEN

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2015, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. I further certify that I will cause 6 paper copies to be filed with the Court within five days of the Court's acceptance of the brief.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/Katherine Twomey Allen
KATHERINE TWOMEY ALLEN